**FILED**

IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**8/11/15**

CECILE FOY GSANGER, CLERK
BY DTello

ACCEPTED
13-14-00711-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/11/2015 12:16:15 PM
CECILE FOY GSANGER
CLERK

NO. 13-14-00711-CV

# IN THE THIRTEENTH COURT OF APPEALS
## EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/11/2015 12:16:15 PM
CECILE FOY GSANGER
Clerk

**DOUG GENGENBACH,**

*Appellant,*

**V.**

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/11/2015 12:16:15 PM
CECILE FOY GSANGER
Clerk

**JESUS RODRIGUEZ,**

*Appellee.*

## APPELLANT'S BRIEF

On Appeal from Cause C-1553-11-H
In the 389TH Judicial District Court
Of Hidalgo County, Texas
Hon. Letty Lopez, Judge Presiding

RICARDO GUERRA
Lead Counsel for Appellant
State Bar No. 24074331
ERIC DAYS
State Bar No. 24082907
Law Offices of Rick Guerra
2211 Rayford Rd. Ste. 111 #134
Spring, TX 77386
Direct: 281-760-4295
Fax: 866-325-0341

**ORAL ARGUMENT IS REQUESTED**

## IDENTITY OF PARTIES & COUNSEL

Below is the complete list required by Texas Rule of Appellate Procedure 38.1(a) of all the parties to the trial court's judgment and the names and addresses of all trial counsel and appellate counsel:

1.      Plaintiff in the trial court (Appellant in this Court):

Doug Gengenbach

2.      Defendant in the trial court (Appellee in this Court):

Jesus Rodriguez

3.      Trial and Appellate Counsel for Plaintiff/Appellant:

Ricardo Guerra (Lead Counsel)
Eric Days
Brent Smith
2211 Rayford Rd. Ste. 111 #134
Spring, TX 77386
281-760-4295

4.      Trial and Appellate Counsel for Defendant/Appellee:

Felipe Garcia Jr.
201 E. University Dr.
Edinburg, TX 78539
956-386-1900

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................iii
TABLE OF AUTHORITIES .........................................................................................iv
STATEMENT OF THE CASE ........................................................................................ 1
STATEMENT REGARDING ORAL ARGUMENT ............................................... 1
ISSUES PRESENTED .................................................................................................... 2
STATEMENT OF FACTS ............................................................................................. 2
SUMMARY OF THE ARGUMENT ......................................................................... 4
ARGUMENT AND AUTHORITY................................................................................ 7
   I.  The Trial Court Committed Reversible Error by Denying the Submission of Gengenbach's Breach of Fiduciary Duty Claim................................................ 7
     A.  Standard of Review.............................................................................................. 7
     B.  Joint Venture/Partnership Defined............................................................ 9
   II. The Trial Court Committed Reversible Error by Commingling a Broad Form Jury Question, #11, with an Improper Damage Element in Question, #12... 17
     A.  Standard of Review............................................................................................ 17
     B.  Rodriguez failed to plead and prove fraudulent inducement; therefore out of pocket damages was the only remedy available, if any......................... 18
     C.  No evidence of Out of Pocket Expenses to Willacy Co-Op ...................... 26
     D.  Submission of an improper damage element in jury question # 12 was harmful error as the jury considered the finding in its calculation for exemplary damages in question #13 and #14. ........................................... 28
   III. The Trial Court Committed Reversible Error in Entering Judgment on Exemplary Damages................................................................................................. 28
     A.  Standard of Review............................................................................................ 29
     B.  Exemplary damages are not recoverable for causes of action that sound in contract alone............................................................................................... 30
     C.  No independent tort proven for exemplary damages............................. 31
   IV. The Jury's Damage Findings are Against the Overwhelming Weight of the Evidence. .................................................................................................................... 33
     A.  Standard of Review............................................................................................ 33
     B.  Excessiveness of Damages ............................................................................. 35
     C.  Damages Awarded............................................................................................. 38
   V.  The Trial Court Committed Reversible Error in not Applying Offsets or Credits.......................................................................................................................... 45
     A.  Standard of Review............................................................................................ 45
     B.  Right to offsets.................................................................................................... 46
PRAYER............................................................................................................................ 49

---

APPENDIX.................................................................................................. 1

    Appendix A ......................................................................................... 2

    Appendix B ......................................................................................... 6

    Appendix C ....................................................................................... 27

    Appendix D ....................................................................................... 40

    Appendix E ........................................................................................ 87

    Appendix F ...................................................................................... 102

## TABLE OF AUTHORITIES

*Cases*

*Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981) _____ 30, 32, 44

*Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 636 (Tex. 2007). _____ 36

*Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d at 756 _____ 18

*Brown v. Am. Transfer and Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980) ____ 46

*Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) _____ 34

*Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.,* 981 S.W.2d 483, 485
    (Tex.App.-Austin 1998, no pet.) _____ 29

*Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (per curiam) ___ 32, 37

*Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000) _____ 18

*D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998) (per
    curiam) _____ 32

*Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-242 (Tex.1985),
    *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) _____ 45

*Duval County Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 335-36 (Tex. App.—
    Austin 1984, no writ) _____ 40

*Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992) _____ 8

*Formosa Plastics Corp. USA v. Presidio Eng. & Contractors,* 960 S.W.2d 41, 49
    (Tex. 1998) _____ 5, 35, 37, 40

*George*, 93 S.W. at 108 _____ 40

*Grant Thornton LLP v. Prospect High Income Fund, ML CBO IV (Cayman) Ltd.,* 314 S.W.3d 913, 923 (Tex. 2010) _____ 39

*Haase v. Glazner,* 62 S.W.3d 795 (Tex. 2001) _____ passim

*Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Communications,* 49 S.W.3d 520, 530 (Tex.App.-Corpus Christi 2001, pet denied) _____ 29

*Harris Cnty. V. Smith,* 96 S.W.3d 230, 233 34(Tex.2002) _____ 18

*Hofland v. Fireman's Fund Ins. Co.,* 907 S.W.2d 597, 599 (Tex.App.-Corpus Christi 1995, no writ) _____ 29

*In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980) _____ 34

*Ingram v. Deere,* 288 S.W. 3d 886, 896 (Tex.2009) _____ 10

*Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998); _____ 9

*Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986) _____ 30, 31

*La.-Pac. Corp. v. Knighten,* 976 S.W.2d 674, 676 (Tex.1998) _____ 7

*Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986) _____ 34

*McDonough v. Zamora,* 338 S.W.2d 507, 513-14 (Tex. Civ. App.—San Antonio 1960, writ ref'd n.r.e.) _____ 32

*Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex.2005) _____ 9

*Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986) _____ 46, 48

*Muller v. Nelson Sherrod & Carter,* 563 S.W.2d 697, 701 (Tex.Civ.App.-Fort Worth 1978, no writ) _____ 29

*Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) _____ 34

*Police Officers Union v. Tamez,* 81 S.W.3d 401, 404-05 (Tex. App.—Corpus Christi 2002, pet. dism'd) _____ 30

*Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986) _____ 34

*Roberts v. S. Pacific Transp. Co.,* 44 S.W.3d 183, 187 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) _____ 8

*Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex. 1994) _____ 35

*Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex.2006) (per curiam) _____ 7

*SJW Prop. Commerce, Inc. v. Sw. Pinnacle Properties, Inc.*, 328 S.W.3d 121, 162 (Tex. App.—Corpus Christi 2010, pet. denied) _____ 35

*Smith–Hamm, Inc. v. Equip. Connection*, 946 S.W.2d 458, 462 (Tex.App.-Houston [14th Dist.] 1997, no writ) _____ 8

*Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 _____ 30, 32, 34

*Stable Energy,* 999 S.W.2d at 547 _____ 30

*Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied) _____ 29

*State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) _____ 35

*Sutton v. Estate of McCormick,* 47 S.W.3d 179, 184-85 (Tex.App – Corpus Christi 2001, no writ) _____ 8

*Sw. Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 627 (Tex. 2004) _____ 34

*Sweet v. Port Terminal R.R.,* 653 S.W.2d 291, 294–95 (Tex.1983) _____ 46

*Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 334 (Tex. App.—Texarkana 1982, writ ref'd n.r.e.) _____ 33

*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994)_____ 34

Union Pac. R.R. Co. v. Williams, 85 S.W.3d 162, 166 (Tex.2002) _____ 8

*Washburn v. Krenek,* 684 S.W.2d 187, 191 (Tex.App—Houston [14[th] Dist.] 1984, writ ref'd n.r.e.) _____ 10

*Statutes*

Tex. Civ. Prac. & Rem.Code Ann. § 41.001(2) (Vernon 2008) _____ 34

TEX. BUS. ORG. CODE §152.051(b) _____ 9

TEX. BUS. ORG. CODE §152.052(a) _____ 10

---

Tex. Civ. Prac. & Rem.Code Ann.§ 41.003(a) (Vernon Supp.2009) _____ 34

*Rules*

Tex. R. App. P. 61.1(b) _____ 18

Tex. R. Civ. P. 278 _____ 8

Texas Rule of Civil Procedure 93 _____ 10

## STATEMENT OF THE CASE

*Nature of the Case:*  Plaintiff/Counter Defendant Doug Gengenbach initially filed suit on June 10, 2011, against Defendant/Counter Plaintiff Jesus Rodriguez.  (CR 24).  Gengenbach asserted claims for breach of contract, quantum meruit, promissory estoppel, negligent misrepresentation, conversion and fraud.  (CR 27, 28).  Rodriguez asserted counter claims for fraud and intentional infliction of emotional distress.  (CR 106, 107).

***Requested Disposition from This Court:***  Doug Gengenbach seeks a reversal of the jury's findings and the trial court's entry of judgment and a rendering of judgment consistent with this Court's findings or in the alternative a remand of his claims to the trial court for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would provide meaningful assistance in deciding this appeal. Although the issues before this Court are not novel, the facts of the case and the application of the oral argument to the facts may provide additional clarity to the Court and assist in reaching the appropriate outcome.

**ISSUES PRESENTED**

1. Did the trial court commit reversible error in omitting Doug Gengenbach's Breach of Fiduciary Duty claim from the jury charge?

2. Did the trial court commit reversible error in allowing Jesus Rodriguez's Jury Question # 11-13 regarding Common Law Fraud as submitted?

3. Did the trial court commit reversible error in entering judgment on exemplary damages after the jury's finding of an agreement between the parties?

4. Were the jury's findings against the great weight of the evidence?

5. Did the trial court commit reversible error by disallowing any offsets or credits to Doug Gengenbach?

**STATEMENT OF FACTS**

Doug Gengenbach offers the following statement of facts in support of his argument that the final judgment signed by the trial court is erroneous.

This appeal arises from a case brought by Doug Gengenbach Plaintiff/Counter Defendant ("Gengenbach" or "Appellant") against Defendant/Counter Plaintiff Jesus Rodriguez ("Rodriguez" or "Appellee") for claims of breach of contract, quantum meruit, promissory estoppel, negligent misrepresentation, conversion and fraud.

On or about August 2010, Rodriguez contacted Gengenbach regarding potential investment in a farming transaction. Rodriguez represented to

Gengenbach that he had entered into farm leases of approximately 1300 acres, within Hidalgo County, Texas.

Following negotiations between the parties Gengenbach agreed to invest financially in the planting, farming, and harvesting of the 1300 acres. Gengenbach agreed to a profit split of 75% for Gengenbach and 25% for Rodriguez. Rodriguez agreed that his personal labor would be included in the 25% as sweat capital and that he would not seek additional labor payments.

Despite significant investment by Gengenbach, Rodriguez reneged on his agreement and threatened to destroy the crop if additional payments were not made. To protect his investment Gengenbach agreed to and began to pay Rodriguez a monthly fee.

Thereafter, Gengenbach was presented with an opportunity to sell a portion of the sorghum crop for conversion to alcohol. The investor interested in the crop advanced to Gengenbach the sum of $60,000 of which Gengenbach paid a quarter, $15,312.00, to Rodriguez, in accordance with their profit sharing agreement.

Without Gengenbach's permission, consent, or knowledge, Rodriguez, harvested the crop and delivered the crop to Willacy Co-op for storage and sale. Rodriguez represented that he was the sole owner and possessed the right to control the disposition of the crop. Based on this representation, Willacy paid Rodriguez an advance of $20,000.00. (CVExh-1 pg. 22). Rodriguez also collected

$17,552.00 from the United States Department of Agriculture, Farm Service Agency (FSA) in 2011 with $16,267 of these payments paid after June 10, 2011. (CVExh-1 pg. 37). However, no portions of funds collected by Rodriguez were delivered to Gengenbach as agreed.

On June 10, 2011, Gengenbach filed suit against Rodriguez. (CVClk Rec. pg. 24). Gengenbach asserted claims for breach of contract, quantum meruit, promissory estoppel, negligent misrepresentation, conversion and fraud. (CVClk Rec. pg. 27, 28). Rodriguez in his verified pleadings specifically denied the existence of a contract and counter sued for claims of fraud and intentional infliction of emotional distress. (CVClk Rec. pg. 31, 34).

After a trial on the merits, the court submitted this cause to the jury. The jury returned a verdict for Rodriguez. On September 25, 2015, the Trial Court signed an Amended Final Judgment in favor of Appellee. (CVClk Rec. pg. 124).

**SUMMARY OF THE ARGUMENT**

The trial court erred by refusing to submit Gengenbach's claim for Breach of Fiduciary Duty. Gengenbach's pleadings included a claim for breach of fiduciary duty and Gengenbach introduced sufficient evidence for the trier of fact. Gengenbach tendered a breach of fiduciary question in substantially correct form, and the question was sufficiently supported by the pleadings and the evidence.

Additionally, The submission of a broad form question of common law fraud mixed with an unsupported damage element led to an improper judgment and now prohibits Gengenbach from properly presenting his case to this Court. The charges by Willacy County Coop were not out of pocket expenses and therefore should not have been included in the charge. The inclusion of this question led to the jury using a figure, unsupported by law, in deciding and calculating its answer to jury questions # 12,13,14.

Furthermore, Rodriquez is not entitled to exemplary damages, because the causes of action at hand sound in contract alone. Rodriquez pleaded and consistently claimed there was no agreement. However, Gengenbach pleaded and providence evidence of an agreement. The jury found an agreement with their affirmative answer to Question #1. Therefore, as a matter of law, entry of judgment on exemplary damages was reversible error.

The jury's damage findings were against the great weight of the evidence. Out of pocket damages is the appropriate method for determining damages in a fraud case when no contract is alleged. *Haase v. Glazner,* 62 S.W.3d 795, 798-99 (Tex. 2001); *Formosa Plastics Corp. USA v. Presidio Eng. & Contractors,* 960 S.W.2d 41, 49 (Tex. 1998). Although the jury in this case found the existence of an agreement to share profits and losses Rodriguez failed to plead and continued to deny the existence of an agreement.

Therefore, Rodriguez is entitled to no more than his out of pocket damages. Rodriguez provided no documentation at trial of his out of pocket expenses. Additionally, even if Rodriguez's testimony at trial is taken to be one hundred percent true, he showed no more than $51,335.21 in out of pocket expenses while evidence and Rodriguez's testimony showed payments to him of at least $56,899. (CVExh-1 pg. 43-49, 53-55, 59-65, 69, 71-79, 85-95, 97, 99, 101, 103-104; CVExh-1 pg. 23-24). Based on his own testimony and evidence that was not refuted at trial Rodriguez generated a profit on the 400 acres. Without more than nominal damages the jury's award for exemplary damages is prohibited.

Lastly, if the jury's award for damages is allowed Gengenbach is entitled to the offsets and/or credits he requested from the trial court. The offsets are for monies paid by Willacy and him for the production of and payment for the crop. Gengenbach established payments directly to Rodriguez of $36,899.64 along with an advance payment by Willacy of $20,000.00 for the crop. In addition Gengenbach presented testimony and evidence of $33,612.48 he expended for inputs to grow the crop. Lastly, Willacy placed $95,577.48 in the court registry as payment for the harvested crop. Without offsets Rodriguez would inappropriately receive $152,477.12 paid directly from Willacy and Gengenbach, the benefit of $33,612.48 towards inputs for the crop, and $197,024.09 in damage awards from the jury.

**ARGUMENT AND AUTHORITY**

**I.    The Trial Court Committed Reversible Error by Denying the Submission of Gengenbach's Breach of Fiduciary Duty Claim.**

The trial court erred by refusing to submit Gengenbach's claim for Breach of Fiduciary Duty to the jury. The refusal was equivalent to summary disposition or a directed verdict prior to reaching the jury. Gengenbach's pleadings included a claim for breach of fiduciary duty for joint venture, Gengenbach introduced evidence at trial of a joint venture, Gengenbach tendered a breach of fiduciary question in substantially correct form, and the question was sufficiently supported by the pleadings and the evidence.

**A.    Standard of Review**

Generally, appellate courts review a trial court's decision to refuse a particular jury question or instruction under an abuse-of-discretion standard. *Shupe v. Lingafelter,* 192 S.W.3d 577, 579 (Tex.2006) (per curiam). *La.-Pac. Corp. v. Knighten,* 976 S.W.2d 674, 676 (Tex.1998). However, the cases cited do not involve the trial court's denial of an entire cause of action.  Here, the trial court's refusal to submit Gengenbach's Breach of Fiduciary Duty Claim was equivalent to summary judgment as it struck an entire cause of action, not an individual question or instruction within an issue already before the jury.

Texas Rule of Civil Procedure 278 requires a trial court to submit questions,

instructions and definitions raised by the written pleadings and the evidence. TEX. R. CIV. P. 278; *Sutton v. Estate of McCormick,* 47 S.W.3d 179, 184-85 (Tex.App – Corpus Christi 2001, no writ); *Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 166 (Tex.2002). Rule 278 is a directive to trial courts requiring them to submit requested questions to the jury if pleadings and any evidence support those questions. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992); *Roberts v. S. Pacific Transp. Co.,* 44 S.W.3d 183, 187 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). If there is some evidence to support the submission, the trial court commits reversible error if it fails to submit the instruction. *Smith–Hamm, Inc. v. Equip. Connection,* 946 S.W.2d 458, 462 (Tex.App.-Houston [14th Dist.] 1997, no writ)

The refusal of the trial court to submit an entire cause of action should not be reviewed under a different standard simply because the trial court decided the issue at the jury charge conference. Had the trial court struck the breach of fiduciary duty claim several days before trial, it would have been considered a dispositive motion and would have been subject to a de novo review. The trial courts use of an abuse of discretion test for an entire cause of action requires the Appellate court to speculate whether the judgment was affected by the refusal of an entire cause of action and is therefore inappropriate.

In the alternative, if this Court were to find that abuse of discretion is the

proper standard, Gengenbach contends that the trial court's denial of Gengenbach's Breach of Fiduciary Duty claim prohibits Gengenbach from properly presenting his claim in this appeal.

### B.     Joint Venture/Partnership Defined

In certain formal relationships, such as attorney-client, partnership, or trustee relationships, a fiduciary duty arises as a matter of law. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998); *Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex.2005);

Under Texas law, a partnership is defined as "an association of two or more persons to carry on a business for profit as owners…, regardless of whether … the persons intend to create a partnership; or … the association is called a 'partnership, 'joint venture, or other name.'" TEX. BUS. ORG. CODE §152.051(b).   The Texas Business Organizations Code also enumerates five factors that indicate that persons have created a partnership:

> 1)     receipt or right to receive a share of profits of the business;
>
> 2)     expression of an intent to be partners in the business;
>
> 3)     participation or right to participate in control of the business;
>
> 4)     agreement to share or sharing:
>
> A) losses of the business; or
>
> B) liability for claims by third parties against the business; and

---

5) agreement to contribute or contributing money or property to the business.

TEX. BUS. ORG. CODE §152.052(a) The "most important factors" are the sharing of profits and control over the business. *Ingram v. Deere*, 288 S.W. 3d 886, 896 (Tex.2009). Texas Rule of Civil Procedure 93 requires a party to specifically deny the existence of a partnership in their pleadings; otherwise the partnership is admitted as a matter of law. The failure to deny partnership status is an admission of the partnership that cannot be controverted at trial. *Washburn v. Krenek,* 684 S.W.2d 187, 191 (Tex.App—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

### 1) Existence of joint venture/partnership

Gengenbach pleaded that he entered into an agreement with Rodriguez to farm acreage as a joint venture and thus a partnership as defined under Texas law. (CVClkRec. pg. 42, 44-45) Gengenbach's pleadings provide the alleged split of 75%/25%. *Id.*

Rodriguez failed to specifically deny the existence of a partnership as required by Texas Rule of Civil Procedure 93. (CVCklRec. Pg 30-38) Rodriguez did deny the existence of any agreement or relationship with Gengenbach in a general sense. (CVClkRec. pg. 31) Gengenbach introduced evidence at trial in support of his pleadings as follows:

### 2) Parties agreed to share in the profits and losses of a farming venture

Gengenbach introduced evidence that the parties agreed to share in the profits and losses of the venture.  The following is an excerpt from Gengenbach's direct examination:

Q.   Okay. And once he approached you again, what were the discussions?

A.   Well, to make a partnership or work something out for the 1911 crop -- or 2011 crop, excuse me.

Q.   Okay. And once again, 2011 is September 1 through -- September 1, 2010 through June 2011?

A.   Yes.

Q.   And what was -- what's your recollection of the discussion? I mean, what terms were used?  Was it a partnership?  Was it --

A.   Well, it's a crop share.  I would call it a crop share. And the share that we talked about was 25 percent for Jesus, 75 percent for myself. I pay the cost, the expenses and he said he had machinery that he could do the, you know, the fieldwork with.   And so he was going to furnish the machinery and I was going to furnish the expenses.

Q.   Okay. Let me stop you there.  25/75 percent.   That's what you said,  right?

A.    Yes.

Q.    Can you elaborate? I mean, was there -- if --

A.    Well, that would be a percentage of the net profits.

Q.    Okay. What did you take that to mean?

A.    Well, I took it to mean that I had an obligation to pay my expenses of the crop. He was going to do the farming and that I was, with the help of God, that I would have a crop to harvest in June.

Q.    Okay. And net profit, is net profit a term that you use regularly in farming?

A.    Yes. It's called the bottom line. In other words, that's what's left after everything is paid.

Q.    Okay. And what generally happens with the money? I mean, I'm assuming -- what happens with the money that's invested, generally?

A.    Well, the money that you invest, you know, you hope to get it back in the returns of a good crop.

Q.    Okay. What is your recollection or what do you recollect Mr. Rodriguez saying at that time? Saying about that agreement and what is it that he told you or --

A.    Well, we come to the agreement that that's what we were going to do. And first thing that we did was pay the rent and I gave him money to pay the rent. (CVRptRecV1 pg. 43 ln. 8 – pg. 45 ln. 1)

During Gengenbach's cross-examination, Rodriguez's attorney's line of questioning acknowledged there was some agreement to a joint venture to farm.

Q.    All right. And your deal with Don Jesus was that you would pay the rent that you claim that you paid at Sal

Del Rey, paid no rent on irrigatable property. 375 acres, and put in the seed, no fertilizer and your arrangement with him was on a sharecropping basis, correct?

A.    Correct.

Q.    And you get 75 percent and he gets 25 percent?

A.    That is correct.

Q.    And he puts up all three of his tractors?

A.    I don't know how many tractors he had.

Q.    However many tractors were needed, he was supposed to put them up, correct?

A.    Correct.

Q.    Equipment?

A.    Yes.

Q.    And we're talking about discs?

A.    Yes.

Q.    Plows, cultivators?

A.    Yes.

Q.    Planters?

A.    Yes.

Q.    Now, you brought your planter down because you had a planter that covered more ground, did you not?

A.    Yes, I did have a planter that covered more ground.

Q. I mean, you were able to plant faster by using your planter rather than the one that he has, which is a little smaller?

A. Yes. And the condition of his planter wasn't in very good condition and so you need a good planter, so I brought a planter down, yes.

Q. But primarily because you could put more rows at a time than you could with his?

A. No, that's not really true. I didn't like the condition of his planter.

Q. But he was happy with his, apparently, because that's what he had been using?

A. That might be so. (CVRptRecV2 pg. 119 ln. 23 – pg. 121 ln. 11).

### 3) Both parties expressed intent to be partners in a joint venture

Notwithstanding the fact that Rodriguez alleged he was defrauded, there was evidence introduced by both parties that they intended to be partners for the farming venture. Gengenbach introduced a profit and loss accompanied by actual cancelled checks showing payments from personal funds for rent ($14,726.00), seed ($19,176.98), fuel ($27,136.28), labor ($18014.68), and parts & repairs ($2929.05) for a total of $81,982.99. (CVExh. pgs. 41-113, CVExh. pgs. 118-123). Rodriguez admitted that all the payments he received from Gengenbach, were in fact spent for the purpose of the Sal Del Rey farm. (CVRptRecV3 pg. 38 ln. 16 – pg. 39 ln. 1). There is no other plausible reason to receive payments in these

amounts and to have spent them on the Sal Del Rey farm without at minimum, an initial intent to be involved in a farming venture.

Additionally, there is a business record affidavit from Willacy Co-Op that states that Jesus Rodriguez delivered grain that was marketed in the amount of $171,853.70. (CVExh. pgs. 3-32). Despite his contentions of fraud, it is implausible that Rodriguez could have expected to receive those sums of money without any contribution towards the costs necessary to raise the crop. The record contains sufficient evidence reflecting Rodriguez's understanding of a business relationship.

### 4) Both parties had right to participate in control of the business such as payments, labor, inputs.

Gengenbach introduced business record affidavits from his bank containing payments to Jesus Rodriguez and others in excess of $100,000.00. (CVExh. pgs. 41-113). Rodriguez admitted that he was in control of the property itself including the harvesting of the crop. (CVRptRecV3 pg. 44 lns. 13-22). Additionally, Rodriguez introduced 31 photograph exhibits of all of the farming equipment he used in furtherance of the farming venture. (CVExh. pgs. 167-259). As previously discussed above, there is evidence that Rodriguez had sufficient control of the crop to market it to Willacy Co-Op for $171,853.70. (CVExh. pgs. 3-32).

### 5) Evidence that both parties agreed to contribute money or property to the business.

As shown above, Gengenbach introduced a profit and loss statement showing an investment of personal funds in the venture in the amount at least $81,982.99 for the payment of rent, seed, fuel, labor, parts & repairs. Rodriguez admitted that those payments were entirely invested in the farming venture. Rodriguez admitted to contributing farming equipment for the benefit of the joint venture. (CVExh. Pgs. 167-259).

### 6) Jury question was submitted in substantially correct form

Plaintiff proposed a jury question in substantially correct form. (CVClkRec. pgs. 60-62). The trial court denied Gengenbach's question as evidenced by the jury charge submitted. (Record 63-82 & CVRptRecV004 pg. 5 ln. 14 – pg. 9 ln. 2). Gengenbach objected in writing to the jury charge and submitted the proposed question to preserve the error. (CVClkRec. Pgs. 58-62).

Based on Plaintiff's pleadings, the evidence, and Rodriguez's lack of evidence to the contrary, Court erred in refusing to submit Plaintiff's question on Breach of Fiduciary Duty; therefore Gengenbach respectfully requests this Court to reverse the trial court's judgment and remand for a new trial on the merits.

**II.** **The Trial Court Committed Reversible Error by Commingling a Broad Form Jury Question, #11, with an Improper Damage Element in Question, #12.**

Gengenbach submitted timely objections to Rodriguez's jury charge questions 11-14 and to the inclusion of damages question related to Willacy Co-Op in Question 12. (CVClk pgs. 58-62 & CVRptRecV004 pg. 5 ln.10- pg. 9 ln.2). Question #12 stated, "Consider the following element of damages, if any, and none other. Fee and expenses charged by Willacy County Coop: _____ in dollars and cents, if any…" [CVClkRec. pg. 78] After answering the Willacy County Coop damage element in the amount of $15,617.60, the jury answered questions #13 and #14 in favor of Rodriguez. Question #14 awarded Rodriguez exemplary damages in the amount of $140,618.49.

The submission of a broad form question of common law fraud mixed with an unsupported damage element led to an improper judgment and now prohibits Gengenbach from properly presenting his case to this Court. The charges by Willacy County Coop were not out of pocket expenses and therefore should not have been included in the charge. The inclusion of this question led to the jury using a figure, unsupported by law, in its answer to jury questions # 12,13,14. (CVClkRec. pgs 78-80).

**A.** **Standard of Review**

Reversible error is presumed when a broad-form question submitted to the

jury commingles damage elements that are unsupported by legally sufficient evidence. *Harris Cnty. V. Smith*, 96 S.W.3d 230, 233 34(Tex. 2002); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000). Including improper measures of damage elements that are unsupported by legally sufficient evidence is harmful, reversible, and a new trial required when the Court cannot determine whether the jury based its verdict solely on the improperly submitted invalid theory or damage element. *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d at 756. The ultimate question is whether "the trial court's charge error 'probably prevented the petitioner from properly presenting its case to the appellate courts.'" *Harris Cnty,* 96 S.W.3d 231; see Tex. R. App. P. 61.1(b).

**B.      Rodriguez failed to plead and prove fraudulent inducement; therefore out of pocket damages was the only remedy available, if any.**

"Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner,* 62 S.W.3d 795 (Tex. 2001). Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim. That is, when a party has not incurred a contractual obligation, it has not been induced to do anything. *Glazner* at 798. *Glazner* also clarified that although some court opinions see no distinction

between fraud and fraudulent inducement, they are not interchangeable with respect to the measure of damages that would be recoverable. *Glazner* at 798-799; *Harris Cnty*, 96 S.W.3d at

As stated in *Glazner*, fraudulent inducement cannot be found where one was not induced into something to their reliance. Here, Rodriguez failed to establish fraud as it related to the farming agreement between the parties.

In his verified pleadings, Rodriguez stated "Defendant/Counter-Plaintiff Jesus Rodriguez specifically denies that there was any contractual agreement or relationship between the parties as alleged by the Plaintiff/Counter-Defendant Doug Gengenbach that there exists no written contract between the parties as required by the Statute of Frauds…" (CVClkRec. pg. 31). Rodriguez's pleadings also state, "Plaintiff-Counter Defendant Gengenbach is guilty of fraud in taking advantage of the lack of education and communication skills of Defendant/Counter-Plaintiff Rodriguez. Gengenbach asked for one-hundred (150) acres of a certain type of grain sorghum to be farmed on Defendant/Counter-Plaintiff Rodriguez's leasehold at the rate of $400.00 per acre." (CVClkRec. pg. 34).

Despite this allegation Rodriguez's pleadings failed to request any actual damages such as out of pocket expenses; they read as follows, "Defendant/Counter-Plaintiff Jesus Rodriguez, seeks recovery for the following: a.

Punitive and Exemplary damages in the maximum amount allowed by Texas law; b. Attorney fees and the costs of the court; c. Pre-judgment and post-judgment interest at the maximum rate provided by law and in the maximum amount allowed by law." (CVClkRec. pg. 35- pg.36).

Rodriguez's testimony at trial failed to provide legally sufficient evidence that he was wrongfully induced into any agreement. Given multiple opportunities, it was clear that Rodriguez was unsure of the damages sought as his testimony contradicted itself on multiple occasions. Examples of his contradictions are as follows:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
In his opening remarks, Rodriguez's counsel stated that Gengenbach asked Rodriguez to custom farm six hundred acres at $400 for 240,000 dollars but then "Gengenbach backed down and went to 125 acres at 400 dollars…" (CVRptRecV1. pg. 14 ln. 22- pg.15 ln. 3)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
When asked specifically what amount he was seeking, Rodriguez first stated that Gengenbach first asked for 600 acres to be planted then only 400. (CVRptRecV3 pg. 18 ln. 13- pg. 19 ln. 3)   Then Rodriguez stated that Gengenbach reduced it to 125 acres. *Id.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Subsequently, due to difficulty understanding the translator, Mr. Rodriguez was asked again,

Q.   (By Mr. Guerra) What amount of money are you asking this jury to award you for your fraud and emotional distress claims?

A.   I'm only asking for the money that he promised me.

Q. And what quantity or what amount of money is that, Mr. Rodriguez?

A. He promised me 400 dollars an acre. We planted 125 acres. I'm not sure, but I think that's the amount of 50,000 dollars, plus all of my equipment expenses. I am not good at calculating, but he needs to pay me the expenses. " (CVRptRecV3 pg. 21 lns 12-23)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q. You claim, Mr. Rodriguez, that Mr. Douglas Gengenbach owes you money. And it is extremely important that I make this -- or that we get an answer of what Douglas Gengenbach owes you?

A. He offered me -- we were talking about the harvesting, that here in the Court I'm talking about 90,000 dollars.

Q. Mr. Rodriguez, has it—did it ever occur to you to credit Mr. Gengenbach for what he has already given you?

A. No. What he's given me.

THE INTERPRETER: The interpreter would like to ask for a repetition.

A. The money that he has given me is for the money that he owes me.

Q. (By Mr. Guerra) And I'm going to ask it again. What is that amount?

A. Approximately 50,000 dollars. (CVRptRecV3 pg. 27 ln. 21 – pg. 28 ln. 13)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q. (By Mr. Guerra) Mr. Rodriguez, we were discussing that somebody has to pay for the seed, fuel and other expenses in order to grow a crop. You understand that?

A. Yes.

Q. And you're not claiming today that you paid for those items, are you?

A. No, but how does he know how much money was used for diesel fuel? I would take the tank of diesel to him with my truck, to the land that we were harvesting on. (CVRptRecV3 pg. 33 ln. 5- ln. 13)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q. You've also asked your attorney to bring counter claims against Mr. Gengenbach for what you allege to be fraud and emotional distress. Is that correct?

A. I never asked for a lawsuit to be filed against him.

Q. Going back through the questions from earlier, sir, can you please state to the jury what amount of money you are requesting from Mr. Gengenbach?

A. I'm not asking for an amount. I'm just asking for what he owes me and what's at Willacy Co-op.

Q. And what does he owe you and what do you state is at Willacy Co-op, sir?

A. Well, I'm not sure how much remains because there has been Court costs and there have been expenses in taking the grain over to where it's at, so I'm not sure how much remains.

Q. So you're asking -- Mr. Rodriguez, you're asking the Court or you're asking the jury just to write you a check for whatever is in the Court registry?

A. I am not asking for anything I should not be asking for. All my life I have worked, I have never committed fraud, I have never filed a lawsuit, I have never been in a lawsuit. This is the first time ever.

Q. Mr. Rodriguez, do you understand that if you are not able to state either damages or any money that you are owed

that you may not be entitled to anything from the Court?

A. I should receive it because I believe that the sum of money is already here, the one sent from the Co-op. (CVRptRecV3 pg. 36 ln. 3 –pg. 37 ln. 7)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q. Sir, that's not the question I'm asking you. I ask the question, you provide the answer. Do you have accounting for this particular check?

A. All the checks were used at the work down in Sal Del Rey.

Q. And isn't it true that Sal Del Rey is the property that you farmed with Mr. Gengenbach?

A. I did all the work in Sal Del Rey -- and I Mr. Gengenbach did the farming in Sal Del Rey. Every check that I received, every expense that was made was used only for Sal Del Rey. (CVRptRecV3 pg. 38-ln. 16 – pg. 39 ln. 1)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q. (By Mr. Guerra) And is Sal Del Rey the property that you allege you had an agreement with Mr. Doug?

A. Yes.

Q. Okay. And doesn't this check say Jesus Rodriguez, Sal Del Rey?

A. All the checks that are made out to my name is all for the work done on Sal Del Rey or for paying things that have to do with Sal Del Rey.

Q. So you're admitting to the jury, Mr. Rodriguez, that these checks, that you cashed these checks and that went to the Sal Del Rey property?

A. All of them, all the checks were used for Sal Del Rey. He did give me some 8,000 dollars and I paid that back

quickly, but all the other checks he gave me were used to pay for Sal Del Rey. Nothing was used for my personal use. (CVRptRecV3 pg. 39 ln. 11 – pg. 40 ln. 1)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q.   Mr. Rodriguez, nobody has stated that you used it for your personal expenses, but please understand, sir that you have brought a fraud claim against my client.

A.   That's true.

Q.   Do you know what fraud means, sir?

A.   That you are not fulfilling your promises.

Q.   Do you realize that these documents will live forever in a court record?

A.   Yes.

Q.   And do you understand that you are claiming fraud against my client, yet you don't have any documents in front of you or you have presented no documents yourself?

A.   No, because I have no experience. Again, I repeat I have no experience in this and this is the first I'm I'm in a Court of Law. (CVRptRecV3 pg. 40 ln. 2 – ln. 17)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q.   Sir, because we talked about a contract that Mr. Gengenbach had yesterday for 490 dollars an acre.

A.   There's a mistake there. At no time did Mr. Douglas want to do a contract with me and I asked him for it several times.

Q.   That wasn't my question, sir. We are talking about the 125 acres of grain sorghum. You got this check and you stated to Mr. Gengenbach that if you didn't get this, then it was time to cut that down and do something else, correct?

A. Yes. (CVRptRecV3 pg. 46 ln. 16 - pg. 47 ln. 1)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q. (By Mr. Guerra) And Mr. Rodriguez, because you're a man of older age or your health is not good, that gives you the right to be bringing fraud claims against Mr. Gengenbach?

A. I'm not filing any lawsuit against this man. All I'm asking is that -- to be granted what is rightfully mine.

Q. But you do understand, sir that, actually, your attorney did bring a fraud claim against my client?

A. If he did so, he's in his full right because he is my attorney and he is here to defend me.

Q. Is that something you're requesting, sir or is that something that you're allowing him to do on his behalf?

A. Oh, no. He's never done anything out of order. And personally speaking, he's always been a very honest man with me.

Q. And I didn't say he wasn't, sir. But what I'm asking you today to clarify for this jury is do you -- are you wanting a fraud charge against my client, Mr. Doug Gengenbach?

A. I already answered no. I just want what's rightfully mine. (CVRptRecV3 pg. 74 ln. 23 – pg. 75 ln. 20)

Rodriguez's pleadings failed to request specific affirmative relief for fraudulent inducement as set out in *Glazner* and *Formosa*. Additionally, Rodriguez's testimony and exhibits fail to provide any evidence that he was induced into any agreement. In fact, Rodriguez specifically denies through his verified petition that he did not enter into the agreement as alleged by Gengenbach.

At best, Rodriguez was entitled to a common law fraud question regarding out of pocket expenses.

### C. No evidence of Out of Pocket Expenses to Willacy Co-Op

Jury charge question #12, "fees and expenses paid to Willacy" was not a proper question in calculating out of pocket expenses. Rodriguez offered no proof of out of pocket expenses paid to Willacy Co-op in reliance of a fraudulent representation. All of the expenses paid to Willacy Co-Op, "including drying charges, grain sorghum check-off remittance, and Willacy's accounts receivable balance as related to Rodriguez" in the amount of $26,835.21 were necessary expenses incurred in harvesting the crop. (CVExh. pg. 6) The same crop that Rodriguez then sold and collected an advance of $20,000.00. (CVExh. pg. 22) Without Willacy's services, there would be no money in the court registry to fight over.

The following discussion at the jury charge conference is evidence that even Rodriguez's counsel and the trial court acknowledged the question might not be worded correctly,

> " Mr. GARCIA: ….So -- and the same thing with Willacy County, I think I stated earlier, I'm not going to be looking for the $26,000. I'm going to be looking for the 4,400 dollars that is the attorney's fees that had to be spent by Willacy County that was taken out of this money on item two.
>
> THE COURT: Whatever the jury decides is the appropriate

amount.

MR. GARCIA: Well, I'm going to be asking for $4,400.

THE COURT: The thing about $26,000, $20,000 of that went to your client, so you really can't be asking for something that your client received, which was he received 20,000 dollars.

MR. GARCIA: Then –

THE COURT: And part of that $26- -- you can't get what you've already gotten.
MR. GARCIA: They never pled a credit to begin with.

THE COURT: But you can't get what you've already gotten. There's testimony that –

MR. GARCIA: And I'm just clarifying that all I'm going to ask for is $4,400.

THE COURT: Okay. Is that your response to his argument?

MR. GARCIA: Yes, ma'am.

THE COURT: Okay. Your objections are overruled. Mr. Guerra, the charge is going to remain the way it is…."

(CVRptRecV004 pg. 7 ln. 23 – pg. 9 ln. 2)

Neither the trial court nor Appellee's counsel can controvert the record. The trial court was clearly aware of the flaws within the question prior to submitting it to the jury and Rodriguez was clearly rewarded with more than even his counsel sought.

**D. Submission of an improper damage element in jury question # 12 was harmful error as the jury considered the finding in its calculation for exemplary damages in question #13 and #14.**

The trial court's submission of damages element in question #12, "Fee and expenses charged by Willacy County Coop:" led to an improper judgment. By answering the aforementioned damages element in the amount of $15,617.60 without any evidence or testimony to support the answer, the jury then used that figure in its calculation for exemplary damages. Since this Court cannot determine from the record, how the jury calculated or arrived at its exemplary damages, it can be presumed that the answer played a role in the finding of exemplary damages in the amount of $140,618.49. The trial court's error now prevents Gengenbach from properly presenting his claims before this Court, as it requires speculation to determine what factor the improper damage element played in the jury's overall award. Based on the foregoing, Gengenbach respectfully requests that this Court reverse the trial court's judgment and remands this case for a new trial on the merits.

**III. The Trial Court Committed Reversible Error in Entering Judgment on Exemplary Damages**

The Court committed reversible error by entering judgment on exemplary damages, because the causes of action sound completely in contract, and exemplary damages are improper. Rodriquez pleaded and consistently claimed

there was no agreement. Gengenbach pleaded and provided evidence there was an agreement, and the jury found an agreement in their answer to Question #1. As a matter of law, when the cause of action sounds in contract alone, the court errs by awarding exemplary damages.

## A.    Standard of Review

A trial court's conclusions of law are not binding on an Appellate Court, and the Appellate Court is free to make its own legal conclusions. *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Communications,* 49 S.W.3d 520, 530 (Tex.App.-Corpus Christi 2001, pet denied); *Muller v. Nelson Sherrod & Carter,* 563 S.W.2d 697, 701 (Tex.Civ.App.-Fort Worth 1978, no writ). "Conclusions of law are reviewed de novo as a question of law and will be upheld if the judgment can be sustained on any legal theory supported by the evidence." *Harlingen Irrigation Dist.,* 49 S.W.3d at 520 (citing *Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.,* 981 S.W.2d 483, 485 (Tex.App.-Austin 1998, no pet.)). A trial court's conclusions of law may not be reviewed for factual sufficiency. *Id.* Conclusions of law may be reversed only if they are erroneous as a matter of law. *Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied); *Hofland v. Fireman's Fund Ins. Co.,* 907 S.W.2d 597, 599 (Tex.App.-Corpus Christi 1995, no writ). Incorrect conclusions of law do not require reversal, provided that the controlling findings of fact support a correct legal theory. *Stable*

*Energy,* 999 S.W.2d at 547; *McAllen Police Officers Union v. Tamez*, 81 S.W.3d 401, 404-05 (Tex. App.—Corpus Christi 2002, pet. dism'd).

**B.    Exemplary damages are not recoverable for causes of action that sound in contract alone.**

The causes of action between Gengenbach and Rodriguez sound in contract alone, and exemplary damages are not recoverable. Exemplary damages are generally not recoverable in contract actions. *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). A suit that can only be characterized as a breach of contract cannot support recovery of exemplary damages. *Id.* at 618.

But contractual relationships may create duties under both contract and tort law. See *Jim Walter Homes*, 711 S.W.2d at 618. "The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract

alone." *Id.*

The major factors demonstrating the causes of action in this case sound only in contract are that there were only damages of economic loss and the fact that the jury found an agreement between the parties. The claims between Gengenbach and Rodriguez all stem from their agreement in a joint venture for the business of farming a tract of land. The actual damages, if any, that Rodriguez could contend he suffered resulted from economic loss related to the contract. As in *Jim Walter Homes*, when economic loss on the contract makes up the injury, then the action sounds in contract alone.

Gengenbach pleaded and proved an agreement demonstrated by the jury's affirmative answer to Question #1 regarding a "verbal agreement to share profits and losses." (CVClkRec pg. 67). The jury determined there was an agreement demonstrating that the proper determination should have been that these causes of action sounded in contract alone. Economic loss as the characterization of the injury, if any, and the jury finding of an agreement points to the determination that, because these claims sound in contract alone exemplary damages are improper as a matter of law, and judgment should not have been entered on those amounts.

### C.    No independent tort proven for exemplary damages

Rodriguez did not prove an independent tort that would allow for the awarding of exemplary damages. There have been exceptions to the doctrine of

only sounding in contract, and the exception cases usually involve the existence of an extra-contractual duty imposed by law, or a tort independent of the contract. See *McDonough v. Zamora*, 338 S.W.2d 507, 513-14 (Tex. Civ. App.—San Antonio 1960, writ ref'd n.r.e.).

Even if a breach of contract is malicious, intentional or capricious, exemplary damages may not be recovered unless a distinct tort theory is alleged and proved. *Amoco*, 622 S.W.2d at 571. Neither gross negligence in a breach of contract nor gross negligence in the inducement to contract will entitle a non-breaching party to exemplary damages. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998) (per curiam).

A party alleging that exemplary damages are recoverable due to the existence of an independent tort duty must plead and prove the independent tort in addition to the breach of contract. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (per curiam) (holding that absent proof that defendant's conduct would give rise to liability outside the contract, the action sounds in contract); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991) (finding that action was in contract and not in tort, because plaintiff's claims against telephone company for failure to publish yellow pages advertisement arose solely from the contract, and the damages were only for economic loss); *Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 334 (Tex. App.—Texarkana

1982, writ ref'd n.r.e.) (denying exemplary damages where evidence was factually insufficient to prove independent tort).

Rodriquez was unable to demonstrate any costs he actually suffered. Rodriquez's counsel agreed he would not be asking for the money he already received from Willacy, the Court was well aware that Rodriquez had received payments, and agreed that Rodriguez could not request damages for amounts already received. (CVRptRecV004 pg. 7 ln. 24 – pg. 8 ln. 20) Rodriquez made a profit, did not suffer any actual damages, and is not entitled to exemplary damages. Rodriguez did not prove an independent tort, was unable to even demonstrate damages, and all of the arguments and evidence points to a breach of the agreement between the parties. There was no independent fraud or other tort proven by Rodriquez. Therefore, Gengenbach respectfully requests this Court to reverse the trial court's judgment and remand for a new trial on the merits.

**IV. The Jury's Damage Findings are Against the Overwhelming Weight of the Evidence.**

Rodriguez did not present evidence at trial that was factually sufficient to support the jury's finding of fraud damages in Question No. 12 of the Charge of the Court or its finding of exemplary damages in Question No. 14.

**A. Standard of Review**

When considering a factual sufficiency challenge to a jury's verdict, courts

of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Ortiz,* 917 S.W.2d at 772; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact finder. Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986).

However, Exemplary damages must be established by clear and convincing evidence; thus, an elevated standard of review. *Sw. Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 627 (Tex. 2004); TEX. CIV. PRAC. & REM. CODE § 41.003(a) (Vernon Supp.2009). Clear and convincing evidence is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE § 41.001(2) (Vernon 2008); *see Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980); *State v. Addington,* 588 S.W.2d 569,

570 (Tex.1979); *W.L. Lindemann Operating Co. v. Strange,* 256 S.W.3d 766, 775 (Tex. App.-Fort Worth 2008, pet denied). "While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed." *Strange,* 256 S.W.3d at 775 (citing *Addington,* 588 S.W.2d at 570); *SJW Prop. Commerce, Inc. v. Sw. Pinnacle Properties, Inc.,* 328 S.W.3d 121, 162 (Tex. App.—Corpus Christi 2010, pet. denied).

## B.    Excessiveness of Damages

A plaintiff alleging fraud in Texas must prove a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex. 1994). There are three types of damages for fraud recognized by Texas law: out of pocket damages, consequential damages and benefit of the bargain damages. *Formosa Plastics Corp. USA v. Presidio Eng. & Contractors,* 960 S.W.2d 41, 49 (Tex. 1998).

### 1) Consequential damages

Consequential damages allow plaintiffs to recover for damages "that are foreseeable and directly traceable to the fraud and result from it" and must be properly pled and proved. *Formosa Plastics,* 960 S.W.2d at 49 n.1. However,

Rodriguez did not plead or present evidence at trial of any lost opportunities based on Gengenbach's alleged misrepresentation and is therefore not entitled to consequential damages. (CVRptRec V3 pgs. 15-153).

### 2) Benefit of the bargain damages

Benefit of the bargain damages arise from the expectancy theory and compare the difference between the value represented and the value actually received. *Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 636 (Tex. 2007).

There are limited situations in which benefit of the bargain damages can be awarded. However, Texas courts have refused to award benefit of the bargain damages in the absence of an enforceable contract. *Haase v. Glazner,* 62 S.W.3d 795, 798-99 (Tex. 2001); *Baylor Univ.*, 221 S.W.3d at 636 (if the measure of damages Sonnicshen seeks for fraud are benefit of the bargain damages he sought to recover for breach of contract, his fraud claim fails).

While economic losses may be recoverable under either fraud or fraudulent inducement that should not be interpreted to mean that fraud and fraudulent inducement are substitutes with regards to the measure of recoverable damages. *Glazner,* 62 S.W.3d at 798-99.

The jury found an agreement between the parties to share profits and losses. (CVClk Rec. pg. 67). However, Rodriguez stated numerous times during trial testimony that he did not have a contract with Gengenbach. (CVRptRec V3 pg. 46

lns. 18-20; pg. 102 lns. 12, 13; pg. 134 lns. 14-16; pg. 141 lns. 13-15; pg. 150 ln. 5, 6). Additionally, in his verified pleadings Rodriguez made no claim for breach of contract and denied the existence of a contractual agreement with Gengenbach. (CVClk Rec. pg. 31). A party alleging that exemplary damages are recoverable due to the existence of an independent tort duty must plead and prove the independent tort in addition to the breach of contract. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (per curiam). Rodriguez is not entitled to benefit of the bargain damages when recovery requires the existence of a contract that he failed to plead and continued to deny at trial.

### 3) Out of pocket damages

The purpose of out of pocket damages is to allow the injured party the ability to recover the actual injury suffered measured by the difference between the value of that which he has parted with, and the value of what he has received. *Formosa Plastics,* 960 S.W.2d *at* 49.

Assuming *arguendo* that Rodriguez is entitled to a recovery of damages of any kind, out of pocket damages would be the appropriate method of calculation. Therefore, "the out of pocket measure only compensates for actual injuries a party sustains through parting with something, no loss of profits on a bid not made, and a profit never realized, in a hypothetical bargain never struck. *Id.* at 49-50. Rodriguez is not entitled to more than his out of pocket damages.

## C. Damages Awarded

### 1) Willacy Co-Op

The evidence is insufficient to support the Jury's award for fees and expenses charged by Willacy County Co-op of $15,617.60. (CVClk Rec. pg. 78). Rodriguez put on no testimony stating what amounts if any he personally paid to Willacy. In fact Willacy made an advance payment of $20,000.00 to Rodriguez. (CVExh-1 pg. 22).

Rodriguez delivered grain to Willacy with a total value of $171,853.70. (CVExh-1 pg. 22). Willacy tendered a check to Mr. Rodriguez for $20,000.00 as partial payment for the grain delivered. *Id.* Following filing of the underlying lawsuit, Willacy submitted a payment to the court registry of $140,618.49. *Id.* at 23. The payment represented the total amount due for grain delivered by Mr. Rodriguez less the $20,000.00 Rodriguez had already received. The additional $11,235.21 withheld or actually charged by Willacy includes $4,819.42 outstanding on Mr. Rodriguez's account, $4,400.00 for attorney's fees, and $2,015.79 for the cost of storing and drying the grain. *Id.* at 23-24.

All additional withdrawals of funds were by court order. $24,702.89 was payable to Pedro Mata and Salazar Custom Harvesting for harvesting of the grain. (CVExh-1 pg. 115). $20,338.12 was payable to NAV County Insurance Co. for insurance charges for crop year 2011. (CVExh-1 pg. 117). The remaining

$95,577.48 was left in the court registry until the conclusion of the underlying case. (CVClk Rec. pg. 128).

The expenses charged by Willacy could not have been incurred in reliance on Gengenbach's misrepresentations, they were necessary expenses to produce a crop, they are not damages that resulted from the fraud as required by the jury charge, and Rodriguez cannot recover them as out-of-pocket damages for his fraud claim. *See Grant Thornton LLP v. Prospect High Income Fund, ML CBO IV (Cayman) Ltd.,* 314 S.W.3d 913, 923 (Tex. 2010)

Gengenbach provided $27,136.28 in funds payable to Willacy. (CVExh-1 pgs. 51, 57, 67, 81, 83, 96, 98, 100, 102). Rodriguez provided no testimony or evidence regarding his out of pocket payments to Willacy. The fees and expenses charged by Willacy were directly related to processing the crop, amounts owed by Rodriguez on his Willacy account, and attorney's fees related to the court case. (CVExh-1 pg. 23). The $11,235.21 of expenses charged by Willacy was $4,382.39 less than those awarded by the jury. Rodriguez is not entitled to recover more than the expenses charged. Additionally, the $20,000.00 paid to Rodriguez reduced his out of pocket expenses by the value of the payment resulting in a profit of at least $8,764.79. The Jury's award for fees and expenses charged by Willacy County Co-op is unsupported by the evidence. Therefore, Gengenbach respectfully requests this Court to reverse the trial court's judgment and remand for a new trial

on the merits.

### 2) Farming services

The evidence is insufficient to support the Jury's award for unpaid farming services rendered on 400 acres of $24,688.00. (CVClk Rec. pg. 78). Gengenbach provided proof of payment to Rodriguez in excess of the amount awarded by the jury. (CVExh-1 pg. 43-49, 53-55, 59-65, 69, 71-79, 85-95, 97, 99, 101, 103-104). Rodriguez provided no proof at trial of any out of pocket expenses. Furthermore, Rodriguez's trial testimony if taken as true does not demonstrate total farming costs on the 400 acres of $24,688.00.

Out-of-pocket damages measure the difference between the value paid by the aggrieved party and the value received. *Formosa Plastics*, 960 S.W.2d at 49; *George v. Hess*, 93 S.W. 107, 108 (Tex. 1906). Several courts have stated that the goal in measuring out-of-pocket damages is to provide actual compensation for injury, not profit. *Duval County Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 335-36 (Tex. App.—Austin 1984, no writ). The theory is that if the plaintiff receives a sum of money that makes what the plaintiff received equal to what was actually conveyed, the plaintiff is made whole. *George*, 93 S.W. at 108.

At trial Gengenbach presented testimony regarding payments along with cancelled checks totaling $36,899.64 made payable to Rodriguez. (CVExh-1 pg. 43-49, 53-55, 59-65, 69, 71-79, 85-95, 97, 99, 101, 103-104). In addition to the

checks payable to Rodriguez, Gengenbach presented testimony and cancelled checks for costs associated with inputs for growing the crop of $33,612.48, which included $27,136.28 payable to Willacy. (CVExh-1 pgs. 51, 57, 67, 81, 83, 96, 98, 100, 102).

At trial Rodriguez was asked to estimate the cost of his work including equipment, employees, his labor, and expenses including diesel. (CVRptRec V3 pg. 119 lns. 19-21). Rodriguez's response was that including labor, equipment, and diesel the cost was between $55.00 and $60.00 per acre. (CVRptRec V3 pg. 119 lns. 23-25). Rodriguez did not provide any additional testimony related to out of pocket expenses. Assuming no offsets or credits and taking his testimony as true Rodriguez's out of pocket expenses would be between $22,000.00 and $24,000.00 for the 400 acres in question. According to Rodriguez's own estimate of costs the jury awarded at least $688.00 more than he was entitled to.

$36,899.64 in checks from Gengenbach were made payable to Rodriguez. (CVExh-1 pg. 43-49, 53-55, 59-65, 69, 71-79, 85-95, 97, 99, 101, 103-104). Rodriguez's testimony at trial was:

A. All the checks were used at the work down in Sal Del Rey.

Q. And isn't it true that Sal Del Rey is the property that you farmed with Mr. Gengenbach?

A. I did all the work in Sal Del Rey -- and I Mr. Gengenbach did the farming in Sal Del Rey. Every check

---

that I received, every expense that was made was used only for Sal Del Rey.

A.    all the checks I received -- all the work, all the farming I did was for Sal Del Rey and every check I received was for the expenses for the farming in Sal Del Rey.

Q.    And is Sal Del Rey the property that you allege you had an agreement with Mr. Doug?

A.    Yes.

Q.    Okay. And doesn't this check say Jesus Rodriguez, Sal Del Rey?

A.    All the checks that are made out to my name is all for the work done on Sal Del Rey or for paying things that have to do with Sal Del Rey.

Q.    So you're admitting to the jury, Mr. Rodriguez that these checks, that you cashed these checks and that went to the Sal Del Rey property?

A.    All of them, all the checks were used for Sal Del Rey. He did give me some 8,000 dollars and I paid that back quickly, but all the other checks he gave me were used to pay for Sal Del Rey. Nothing was used for my personal use. (CVRptRec V3 pg. 38 ln. 19- pg. 39 ln. 1; pg. 39 ln. 7-pg. 40 ln. 1).

As previously stated, based on Rodriguez's testimony at trial the most his out of pocket expenses could have been was $24,000.00 on the 400 acres. (CVRptRec V3 pg. 119 lns. 23-25). Furthermore, he acknowledged that $36,899.64 was paid directly to him by Gengenbach for the 400 acres. (CVRptRec V3 pg. 38 ln. 19- pg. 39 ln. 1; pg. 39 ln. 7-pg. 40 ln. 1). An additional $33,612.48

used for purchase of inputs on the crop. (CVExh-1 pgs. 51, 57, 67, 81, 83, 96, 98, 100, 102).

Therefore, Rodriguez did not have any out of pocket expenses but he received a profit of $12,899.64 in payments from Gengenbach. Rodriguez spent no money and received a minimum of $12,899.64 for farming on the 400 acres. That figure is correct without considering any of the $33,612.48 for inputs. The Jury's award for unpaid farming services rendered on 400 acres is unsupported by the evidence. Therefore, Gengenbach respectfully requests this Court to reverse the trial court's judgment and remand for a new trial on the merits.

### 3) Exemplary damages

The evidence is insufficient to support the Jury's award for exemplary damages of $140,618.49. (CVClk Rec. pg. 80). Despite Rodriguez's testimony to the contrary the jury believed that a contract existed between the parties. In their answer to Charge of the Court Question No. 1, "Did Doug Gengenbach and Jesus Rodriguez enter into a verbal agreement to share in the profits and losses of crops at Sal Del Rey and Floral Rd. properties?" the jury answered **Yes**. (CVClk Rec. pg. 67). The mere fact that there is a dispute between the parties regarding the terms of an agreement does not transform a contractual disagreement into a fraud claim. *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002).

Exemplary damages are generally not recoverable in contract actions.

*Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). When the plaintiff's injury is nothing more than the economic loss of a contract, the action sounds in contract alone and tort damages are not recoverable. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes* at 618. Therefore, the Jury's award of $140,618.49 for exemplary damages is unsupported by the evidence and should be reversed.

However, if an award of punitive damages is allowable under Rodriguez's fraud claim the recovery is still limited by his out of pocket expenses. Considering the testimony provided by Rodriguez related to farming costs on the 400 acres and the accounting provided by Willacy, total out of pocket expenses for the two claims could not have exceeded $35,235.21. (CVExh-1 pg. 23-24; CVRptRec V3 pg. 119 lns. 23-25). Rodriguez received $56,899.64 in payments from Gengenbach and Willacy resulting in a minimum profit of $21,664.43. (CVExh-1 pg. 43-49, 53-55, 59-65, 69, 71-79, 85-95, 97, 99, 101, 103-104; CVExh-1 pg. 23-24). There is no evidence that Rodriguez had any out of pocket expenses in excess of the remaining damage award of $16,100.00 for down payment on the tractor. Deducting the out of pocket expense of $16,100.00 from Gengenbach and Willacy's payments Rodriguez profited $5,564.43 on the 400 acres.

---

Exemplary damages cannot be awarded for nominal or zero damages. Tex. Civ. Prac. Rem. Code 41.004. The Jury's award of $140,618.49 for exemplary damages is unsupported by the evidence. Therefore, Gengenbach respectfully requests this Court to reverse the trial court's judgment and remand for a new trial on the merits.

## V. The Trial Court Committed Reversible Error in not Applying Offsets or Credits.

After finding an agreement between Gengenbach and Rodriguez to share profits and losses the jury awarded Rodriguez damages including exemplary damages totaling $197,024.09. (CVClk Rec. pgs. 67, 78, 80). Gengenbach plead the fact to the trial court that the jury award provided no offsets for payments made to Rodriguez by Willacy, the Federal Farm Service Agency (FSA), and Gengenbach, nor did it factor in the existence of the $95,577.48 in funds placed in the courts registry.

### A. Standard of Review

A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In ascertaining whether the trial court abused its discretion, the reviewing court must determine if the trial

court acted without reference to any guiding rules and principles. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986). Texas courts of appeal have the power to review excessiveness of damages and to order remittitur. *Sweet v. Port Terminal R.R.,* 653 S.W.2d 291, 294–95 (Tex.1983).

### B. Right to offsets

The right to an offset is an affirmative defense. *Brown v. Am. Transfer and Storage Co*., 601 S.W.2d 931, 936 (Tex. 1980). The party asserting offset has the burden of pleading offset and of proving facts necessary to support it. *Id.* Gengenbach through counsel stated that without allowing for offsets Rodriguez would receive $80,829.37 in payments and credits from the agreement to share profits and losses, $197,024.09 in damages from the jury, and $95,577.48 from the court registry. (CVClk Rec. pg. 89). Gengenbach argued in his Motion for New Trial that he had provided thousands of dollars in cancelled checks made payable to Rodriguez and for inputs to grow the crop. (CVClk Rec. pg. 133 ¶ 11-136 ¶ 15). It was also argued that the jury's award was compensating Rodriguez for inputs without offsetting to allow for sharing of profits. *Id.*

Willacy withheld $11,235.21 including $4,819.42 outstanding on Mr. Rodriguez's account, $4,400.00 for attorney's fees, and $2,015.79 for the cost of storing and drying the grain from its payment to the court registry. (CVExh pg. 23-24). Rodriguez did not provide a single cancelled check or document

demonstrating expenses above and beyond those withheld by Willacy. However, evidence presented at trial showed that Rodriguez received a $20,000.00 payment from Willacy. *Id.* pg. 22.

Rodriguez's own testimony was that his expenses on the 400 acres were no more than $24,000.00. (CVRptRec V3 pg. 119 lns. 23-25). Rodriguez did not provide a single cancelled check or document demonstrating expenses above and beyond those he testified to. Furthermore, Rodriguez admitted that Gengenbach paid him $36,899.64 toward the 400 acres. (CVRptRec V3 pg. 38 ln. 19- pg. 39 ln. 1; pg. 39 ln. 7-pg. 40 ln. 1).

The funds on deposit in the court's registry were from the sale of the crop produced by Rodriguez and Gengenbach. Following the trial, the Trial Court signed an Order of Dissolution of Temporary Injunction issuing funds of $95,577.48 to Rodriguez. (CVClk Rec. pg. 128).

Rodriguez did not unilaterally incur expenses on the crop. Additionally, the evidence of his out of pocket expenses if assumed one hundred percent true demonstrates a maximum amount of $51,335.21 including charges by Willacy, $60.00 per acre on the 400 acres and $16,100.00 for the tractor. Gengenbach presented evidence of $56,899.64 paid directly to Rodriguez including $36,899.64 paid by Gengenbach and $20,000.00 paid by Willacy. (CVExh-1 pg. 43-49, 53-55, 59-65, 69, 71-79, 85-95, 97, 99, 101, 103-104; CVExh pg. 23-24).

Gengenbach also presented evidence of $33,612.48 for inputs on the crop. (CVExh-1 pgs. 51, 57, 67, 81, 83, 96, 98, 100, 102). The $95,577.48 in the court registry along with the $20,000 was payment for the crop farmed by Gengenbach and Rodriguez in an agreement to share profits and losses.

The trial court must act with reference to guiding rules and principles. *Morrow* 714 S.W.2d at 298. The Trial Court had access to all the evidence presented at trial and Gengenbach's request for offsets. However, the Court determined prior to the jury's determination of liability or damages that "whatever the jury decides is the appropriate amount," and that "fees and expenses are whatever they believe it is." (CVRptRecV004 pg. 8 lns. 4-5; pg. 11 lns. 7-8).

During the hearing on dissolution of the temporary injunction, Genganbach's counsel argued to the court about the excessiveness of the damages and that the $95,577.48 in the court registry should be applied as an offset to damages. (CVRptRecV005 pg. 14 lns. 7-17). The trial court stated that Gengenbach did not win and "the money goes to Mr. Rodriguez." (CVRptRecV005 pg. 15 lns. 23-24). At the hearing on Gengenbach's Motion for Trial counsel again requested offsets for inputs and the $95,577.48 in the court registry. (CVRptRecV006 pg. 10 lns. 1-20).

Gengenbach was entitled to offset the damage award by monies already given to Rodriguez, monies paid towards inputs, and the $95,577.48 in the court

registry.  The Trial Court erred by not applying offsets or credits to the jury's award for damages of $197,024.09.  Therefore, Gengenbach respectfully requests this Court to reverse the trial court's judgment and remand for a new trial on the merits.

**PRAYER**

Gengenbach presented sufficient evidence at trial to establish the existence of a joint venture. Therefore, the trial court erred by denying the submission of Gengenbach's breach of fiduciary duty claim.   Additionally, the establishment of an agreement between Gengenbach and Rodriguez should have precluded the award of exemplary damages without the establishment of a separate and distinct tort claim. Moreover, Rodriguez was not entitled to anything more than out of pocket reliance damages without establishing an independent tort claim. The cash payments to Rodriguez by Willacy and Gengenbach that Gengenbach requested as offsets or credits should have been applied to reduce Rodriguez's out of pocket expense and/or the overall damages award.  Accordingly, the entry of judgment against Gengenbach should be reversed, and the action should be remanded to the 389TH Judicial District Court Of Hidalgo County, for further consideration.

Respectfully submitted,

Law Offices of Rick Guerra, PLLC


By: */s/ Ricardo Guerra*
Ricardo Guerra
Texas Bar No. 24074331
Email: service@rickguerra.com
Law Offices of Rick Guerra, PLLC
2211 Rayford Rd Ste 111 #134
Spring, Texas 77386
Tel. (281) 760-4295
Fax. (866) 325-0341
Attorney for Plaintiff/Counter Defendant
Doug Gengenbach

# APPENDIX

# Appendix A

Electronically Filed
9/23/2014 5:50:20 PM
Hidalgo County District Clerks
Reviewed By: Claudia Rodriguez

Cause No. C-1553-11-H

| | | |
|---|---|---|
| DOUG GENGENBACH | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| JESUS RODRIGUEZ | § | |
| Defendant | § | |
| | § | |
| V. | § | 389TH JUDICIAL DISTRICT |
| | § | |
| JESUS RODRIGUEZ | § | |
| Counter-Plaintiff | § | |
| V. | § | |
| | § | |
| DOUG GENGENBACH | § | |
| Counter-Defendant | § | HIDALGO COUNTY, TEXAS |

## AMENDED FINAL JUDGMENT

On August 19, 2014, this case was called for trial. Plaintiff Counter Defendant Doug Gengenbach, appeared in person and through his attorney and announced ready for trial. Defendant Counter Plaintiff Jesus Rodriguez, appeared in person and through his attorney and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and arguments of counsel. In response to the jury charge, the jury made findings that the court received, filed, and entered of record. The questions submitted to the jury and the jury's findings are attached as "Exhibit A" and incorporated by reference.

In response to Question No. 1, "Did Doug Gengenbach and Jesus Rodriguez enter into a verbal agreement to share in the profits and losses of crops at Sal Del Rey and Floral Rd. properties? The jury answered. "Yes".

In response to Question No. 11, "Did Doug Gengenbach commit fraud against Jesus Rodriguez?" The jury answered "Yes".

In response to Question No. 12, the jury answered and awarded a total of $56,405.60 in general damages.

1

124

In response to Question No. 13, "Do you find by "clear and convincing" evidence that the harm, if any, to Jesus Rodriguez proximately resulted from fraud?" The jury answered "Yes". Unanimously.

In response to Question No. 14, the jury awarded $140,618.49, as exemplary damages. The jury's response was unanimous.

The jury's findings were in favor of Defendant Cournter Plaintiff Jesus Rodriguez and against Plaintiff Counter Defendant Doug Gengenbach.

IT IS ORDERED ADJUDGED AND DECREED that Defendant Counter Plaintiff Jesus Rodriguez recover from Plaintiff Counter Defendant Doug Gengenbach the sum of $56,405.60, plus $10,153.00 as pre judgment interest calculated at 6% per annum and post judgment interest at the rate of 6% per annum.

IT IS ORDERED ADJUDGED AND DECREED that Defendant Counter Plaintiff Jesus Rodriguez have and recover from Plaintiff Counter Defendant Doug Gengenbach the sum of $140,618.49, in punitive damages together with post judgment interest at the rate of 6% compounded annually.

IT IS ORDERED ADJUDGED AND DECREED that Jesus Rodriguez recover all taxable costs of court incurred.

IT IS ORDERED ADJUDGED AND DECREED that Jesus Rodriguez recover post judgment interest at the maximum legal rate at 6% per annum on all sums of monies awarded.

IT IS ORDERED ADJUDGED AND DECREED that Doug Gengenbach take nothing in this suit.

All other relief not expressly granted in this Final Judgment is DENIED. This Judgment is final and disposes of all claims and all parties, and is appealable.

The court orders execution to issue for this judgment.

SIGNED on September 25 , 2014.

_____
PRESIDING JUDGE

2

125

CC: Felipe Garcia, Jr.- email:homerfgjr@gmail.com
Ricardo Guerra-email: Rick@rickguerra.com

126

Appendix B

Cause No. <u>C-1553-11-H</u>

FILED

AT 10:20 O'CLOCK A M

AUG 2 6 2014

LAURA HINOJOSA, CLERK
District Courts, Hidalgo County
By_____Deputy#15

| | | |
|---|---|---|
| **DOUG GENGENBACH** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| | § | **389TH JUDICIAL DISTRICT** |
| | § | |
| **JESUS RODRIGUEZ** | § | |
| | § | |
| **Defendants,** | § | **OF HIDALGO COUNTY, TEXAS** |

## CHARGE OF THE COURT

Members of the Jury:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do no discuss the case with anyone else, either in person or by other means. Do not do any independent investigations about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Here are the instructions for answering the questions:

1.      Do not let bias, prejudice or sympathy play any part in your decision.

2.      Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.      You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.      If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.      All the questions and answers are important. No one should say that any question or answer is not important.

63

6.     Answer "Yes" or "No" to all questions unless you are told otherwise. A "Yes" answer must be based on a preponderance of the evidence, unless you are told otherwise. Whenever a question requires an answer other than "Yes" or "No", your answer must be based on a preponderance of the evidence, unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.     Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.     Do not answer questions by drawing straws or by any method of chance.

9.     Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.     Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.     Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste you time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. Have the complete charge read aloud if it will be helpful to your deliberations;

   b. Preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. Give written questions or comments to the bailiff who will give them to the judge;

   d. Write down the answers you agree on;

   e. Get the signatures for the verdict certificate; and

   f. Notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

### Instructions for Signing the Verdict Certificate:

1. Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict. If 11 jurors agree on every answer, those 11 jurors sign the verdict. If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
Judge Letty Lopez

## GENERAL INSTRUCTION NO. 1

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

**QUESTION No. 1**

        Did **DOUG GENGENBACH** and **JESUS RODRIGUEZ** enter into a verbal agreement to share in the profits and losses of crops at Sal Del Rey and Floral Rd properties?

        In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Answer "Yes" or "No."

Answer: _____Yes_____

If you answered "Yes" to **Question No. 1** then answer **Question No. 2**. Otherwise, do not answer **Question No. 2**. If you answered "No" to **Question No. 1** then answer **Question No. 5**.

## QUESTION No. 2

Did **JESUS RODRIGUEZ** fail to comply with the verbal agreement?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

1. the extent to which the injured party will be deprived of the benefit which he reasonably expected;

2. the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

3. the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

5. the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No."

Answer: ___ no ___

If you answered "Yes" to **Question No. 2** then answer **Question No. 3**. Otherwise, do not answer **Question No. 3**.

**QUESTION No. 3**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate **DOUG GENGENBACH** for his damages, if any, that resulted from such failure to comply with the verbal agreement?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Consider the following elements of damages, if any, and none other. Answer separately in dollars and cents for damages, if any.

**DOUG GENGENBACH'S** unreimbursed expenses under the verbal agreement:

Answer: $_____ in dollars and cents, if any.

**DOUG GENGENBACH'S** unpaid profits under the verbal agreement:

Answer: $_____ in dollars and cents, if any.

If you answered "Yes" to **Question No. 2**, then answer the following question. Otherwise, do not answer **Question No. 4**.

**QUESTION No. 4**

What is a reasonable fee for the necessary services of **DOUG GENGENBACH'S** attorney, stated in dollars and cents?

Answer with an amount for each of the following:

1.      For representation in the trial court.

Answer:  $_____ in dollars and cents, if any.

If you answered "Yes" to **Question No. 1** then **DO NOT** answer **Question No. 5**. Otherwise, answer **Question No. 5**.

If you answered "No" to **Question No. 5** then answer **Question No. 8**.

**QUESTION No. 5**

Did **DOUG GENGENBACH** substantially rely to his detriment on **JESUS RODRIGUEZ'S** promise, if any, and was this reliance foreseeable by **JESUS RODRIGUEZ?**

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to **Question No. 5** then answer **Question No. 6**. Otherwise, do not answer **Question No. 6**.

**QUESTION No. 6**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate **DOUG GENGENBACH** for his damages, if any, that resulted from his reliance on **JESUS RODRIGUEZ's** promise?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Consider the following elements of damages, if any, and none other.

The amount **DOUG GENGENBACH** invested in the crops at Sal del Rey and Floral Rd properties based on **JESUS RODRIGUEZ'S** promise.

Answer: $_____ in dollars and cents, if any.

72

If you answered "Yes" to **Question No. 5**, then answer **Question No. 7**. Otherwise, do not answer **Question No. 7**.

**QUESTION No. 7**

What is a reasonable fee for the necessary services of **DOUG GENGENBACH'S** attorney, stated in dollars and cents?

Answer with an amount for each of the following:

      1.     For representation in the trial court.

Answer: $_____ in dollars and cents, if any.

# QUESTION No. 8

Did **JESUS RODRIGUEZ** commit fraud against **DOUG GENGENBACH**?

"Misrepresentation" means

1.     a false statement of fact; or

2.     a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Fraud occurs when:

1.     a party makes a representation, and

2.     the representation was material, and

3.     the representation was false, and

4.     the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

5.     the misrepresentation is made with the intention that it should be acted on by the other party, and

6.     the other party relies on the misrepresentation and thereby suffers injury.

"Material" means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.

Answer "Yes" or "No."

Answer:     no

If you answered "Yes" to **Question No. 8** then answer **Question No. 9**. Otherwise, do not answer **Question No. 9**.

**QUESTION No. 9**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate **DOUG GENGENBACH** for his damages, if any, that were proximately caused by such fraud?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the risk of harm complained of must be such that a person using the ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate as to what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Do not include in your answer any amount that you find **DOUG GENGENBACH** could have avoided by the exercise of reasonable care.

Consider the following element of damages, if any, and none other.

Answer: $_____ in dollars and cents, if any.

If you answered "Yes" to **Question No. 8**, then answer **Question No. 10**. Otherwise, do not answer **Question No.10**.

**QUESTION No. 10**

What is a reasonable fee for the necessary services of **DOUG GENGENBACH'S** attorney, stated in dollars and cents?

Answer with an amount for each of the following:

1.　　For representation in the trial court.

Answer: $_____ in dollars and cents, if any.

## QUESTION No. 11

Did **DOUG GENGENBACH** commit fraud against **JESUS RODRIGUEZ?**

"Misrepresentation" means

1. a false statement of fact; or

2. a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Fraud occurs when:

1. a party makes a representation, and

2. the representation was material, and

3. the representation was false, and

4. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

5. the misrepresentation is made with the intention that it should be acted on by the other party, and

6. the other party relies on the misrepresentation and thereby suffers injury.

"Material" means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.

Answer "Yes" or "No."

Answer:   yes

If you answered "Yes" to **Question No. 11**, then answer **Question No. 12**. Otherwise, do not answer **Question No.12**.

**QUESTION No. 12:**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate **JESUS RODRIGUEZ** for his damages, if any, that were proximately caused by such fraud?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the risk of harm complained of must be such that a person using the ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate as to what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Do not include in your answer any amount that you find **JESUS RODRIGUEZ** could have avoided by the exercise of reasonable care.

Consider the following element of damages, if any, and none other.

Fee and expenses charged by Willacy County Coop:
$ 15,617. 60 in dollars and cents, if any.

Unpaid farming services rendered on 400 acres
in reliance on the misrepresentation:  $ 24,688. 00 in dollars and cents, if any.

Tractor down-payment and shipping expense: $ 16,100. 00 in dollars and cents, if any.

Answer **Question No. 13** only if you unanimously answered "Yes" to **Question No. 11** and **No. 12** by filling in an amount greater than zero. Otherwise, do not answer the following question.

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten **or more** jurors. Otherwise, you must not answer the following question.

## QUESTION NO. 13

Do you find by "clear and convincing" evidence that the harm, if any, to Jesus Rodriguez proximately resulted from fraud?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Fraud" occurs when a party makes a material representation, the representation was false, the representation was made with the knowledge of its falsity, or made recklessly without knowledge of its truth and as positive assertion, with the intention that it should be acted upon by another party, that party acted in reliance upon it, and he thereby suffered injury.

Answer "Yes" or "No."

Answer:     yes

Answer the following **Question No. 14** only if you unanimously answered "yes" to **Question No. 13**. Otherwise, do not answer the following **Question No. 14**.

You must unanimously agree on the amount of any award of exemplary damages.

**QUESTION NO. 14**

What sum of money, if any, if paid now in cash, should be assessed against **DOUG GENGENBACH** and awarded to **JESUS RODRIGUEZ** as exemplary damages, if any, for the conduct found in response to **Question No. 13**?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are –

    a.    The nature of the wrong.

    b.    The character of the conduct involved.

    c.    The degree of culpability of **DOUG GENGENBACH**.

    d.    The situation and sensibilities of the parties concerned.

    e.    The extent to which such conduct offends a public sense of justice and propriety.

Answer:    $ 140,618.49 in dollars and cents, if any.

# VERDICT CERTIFICATE

**Check One:**

_✓_____ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

*Rosemary Bernal*        *Rosemary Bernal*

Signature of Presiding Juror        Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

SIGNATURE             NAME PRINTED

1. _____    _____

2. _____    _____

3. _____    _____

4. _____    _____

5. _____    _____

6. _____    _____

7. _____    _____

8. _____    _____

9. _____    _____

10. _____    _____

11. _____    _____

81

If you have answered **Questions No. 13** and **No. 14**, then you must sign this certificate also.

## Additional Certificate

I certify that the jury was unanimous in answering the following questions. All 12 of us agreed to each of the answers. The presiding juror has signed the certificate for all 12 of us.

**Question No. 13**

_Rosemary Bernal_
_____
Signature of Presiding Juror

_Rosemary Bernal_
_____
Printed Name of Presiding Juror

**Question No. 14**

_Rosemary Bernal_
_____
Signature of Presiding Juror

_Rosemary Bernal_
_____
Printed Name of Presiding Juror

August 26, 2014
Judge Leticia Lopez    received verdict @ 5:50 p.m.

82

# Appendix C

Vernon's Texas Rules Annotated
Texas Rules of Civil Procedure
Part II. Rules of Practice in District and County Courts
Section 11. Trial of Causes
D. Charge to the Jury

TX Rules of Civil Procedure, Rule 278

Rule 278. Submission of Questions, Definitions, and Instructions

Currentness

The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence. Except in trespass to try title, statutory partition proceedings, and other special proceedings in which the pleadings are specially defined by statutes or procedural rules, a party shall not be entitled to any submission of any question raised only by a general denial and not raised by affirmative written pleading by that party. Nothing herein shall change the burden of proof from what it would have been under a general denial. A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party. Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.

**Credits**

July 15, 1987, eff. Jan. 1, 1988.

**Editors' Notes**

**COMMENT--1988**

Formerly a part of Rule 279.

Notes of Decisions (313)

Vernon's Ann. Texas Rules Civ. Proc., Rule 278, TX R RCP Rule 278
Current with amendments received through 6/1/2015

**End of Document**            © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 4. Pleading
        C. Pleadings of Defendant

TX Rules of Civil Procedure, Rule 93

Rule 93. Certain Pleas to Be Verified

Currentness

A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.

1. That the plaintiff has not legal capacity to sue or that the defendant has not legal capacity to be sued.

2. That the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which he is sued.

3. That there is another suit pending in this State between the same parties involving the same claim.

4. That there is a defect of parties, plaintiff or defendant.

5. A denial of partnership as alleged in any pleading as to any party to the suit.

6. That any party alleged in any pleading to be a corporation is not incorporated as alleged.

7. Denial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. Where such instrument in writing is charged to have been executed by a person then deceased, the affidavit shall be sufficient if it states that the affiant has reason to believe and does believe that such instrument was not executed by the decedent or by his authority. In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved.

8. A denial of the genuineness of the indorsement or assignment of a written instrument upon which suit is brought by an indorsee or assignee and in the absence of such a sworn plea, the indorsement or assignment thereof shall be held as fully proved. The denial required by this subdivision of the rule may be made upon information and belief.

9. That a written instrument upon which a pleading is founded is without consideration, or that the consideration of the same has failed in whole or in part.

10. A denial of an account which is the foundation of the plaintiff's action, and supported by affidavit.

11. That a contract sued upon is usurious. Unless such plea is filed, no evidence of usurious interest as a defense shall be received.

12. That notice and proof of loss or claim for damage has not been given as alleged. Unless such plea is filed such notice and proof shall be presumed and no evidence to the contrary shall be admitted. A denial of such notice or such proof shall be made specifically and with particularity.

13. In the trial of any case appealed to the court from the Industrial Accident Board [1] the following, if pleaded, shall be presumed to be true as pleaded and have been done and filed in legal time and manner, unless denied by verified pleadings:

    (a) Notice of injury.

    (b) Claim for compensation.

    (c) Award of the Board.

    (d) Notice of intention not to abide by the award of the Board.

    (e) Filing of suit to set aside the award.

    (f) That the insurance company alleged to have been the carrier of the workers' compensation insurance at the time of the alleged injury was in fact the carrier thereof.

    (g) That there was good cause for not filing claim with the Industrial Accident Board [1] within the one year period provided by statute.

    (h) Wage rate.

A denial of any of the matters set forth in subdivisions (a) or (g) of paragraph 13 may be made on information and belief.

Any such denial may be made in original or amended pleadings; but if in amended pleadings the same must be filed not less than seven days before the case proceeds to trial. In case of such denial the things so denied shall not be presumed to be true, and if essential to the case of the party alleging them, must be proved.

14. That a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged.

15. In the trial of any case brought against an automobile insurance company by an insured under the provisions of an insurance policy in force providing protection against uninsured motorists, an allegation that the insured has complied with all the terms

of the policy as a condition precedent to bringing the suit shall be presumed to be true unless denied by verified pleadings which may be upon information and belief.

16. Any other matter required by statute to be pleaded under oath.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of March 31, 1941, eff. Sept. 1, 1941; Sept. 20, 1941, eff. Dec. 31, 1941; June 16, 1943, eff. Dec. 31, 1943; Oct. 12, 1949, eff. March 1, 1950; July 21, 1970, eff. Jan. 1, 1971; July 22, 1975, eff. Jan. 1, 1976; June 15, 1983, eff. Sept. 1, 1983; Dec. 5, 1983, eff. April 1, 1984.

Notes of Decisions (794)

Footnotes

1      The name of the Industrial Accident Board was changed to the Texas Workers' Compensation Commission pursuant to Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 17.01. The Texas Workers' Compensation Commission was abolished and the Workers' Compensation Division of the Texas Department of Insurance was established pursuant to Acts 2005, 79th Leg., ch. 265, § 1.003.

Vernon's Ann. Texas Rules Civ. Proc., Rule 93, TX R RCP Rule 93

Current with amendments received through 6/1/2015

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 4. Partnerships (Refs & Annos)
      Chapter 152. General Partnerships
        Subchapter B. Nature and Creation of Partnership

V.T.C.A., Business Organizations Code § 152.051

§ 152.051. Partnership Defined

Effective: January 1, 2006
Currentness

(a) In this section, "association" does not have the meaning of the term "association" under Section 1.002.

(b) Except as provided by Subsection (c) and Section 152.053(a), an association of two or more persons to carry on a business for profit as owners creates a partnership, regardless of whether:

  (1) the persons intend to create a partnership; or

  (2) the association is called a "partnership," "joint venture," or other name.

(c) An association or organization is not a partnership if it was created under a statute other than:

  (1) this title and the provisions of Title 1 applicable to partnerships and limited partnerships;

  (2) a predecessor to a statute referred to in Subdivision (1); or

  (3) a comparable statute of another jurisdiction.

(d) The provisions of this chapter govern limited partnerships only to the extent provided by Sections 153.003 and 153.152 and Subchapter H, Chapter 153.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

Notes of Decisions (2)

V. T. C. A., Business Organizations Code § 152.051, TX BUS ORG § 152.051
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 4. Partnerships (Refs & Annos)
      Chapter 152. General Partnerships
        Subchapter B. Nature and Creation of Partnership

V.T.C.A., Business Organizations Code § 152.052

§ 152.052. Rules for Determining if Partnership is Created

Effective: January 1, 2006
Currentness

(a) Factors indicating that persons have created a partnership include the persons':

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) agreement to share or sharing:

(A) losses of the business; or

(B) liability for claims by third parties against the business; and

(5) agreement to contribute or contributing money or property to the business.

(b) One of the following circumstances, by itself, does not indicate that a person is a partner in the business:

(1) the receipt or right to receive a share of profits as payment:

(A) of a debt, including repayment by installments;

(B) of wages or other compensation to an employee or independent contractor;

(C) of rent;

(D) to a former partner, surviving spouse or representative of a deceased or disabled partner, or transferee of a partnership interest;

(E) of interest or other charge on a loan, regardless of whether the amount varies with the profits of the business, including a direct or indirect present or future ownership interest in collateral or rights to income, proceeds, or increase in value derived from collateral; or

(F) of consideration for the sale of a business or other property, including payment by installments;

(2) co-ownership of property, regardless of whether the co-ownership:

(A) is a joint tenancy, tenancy in common, tenancy by the entirety, joint property, community property, or part ownership; or

(B) is combined with sharing of profits from the property;

(3) the right to share or sharing gross returns or revenues, regardless of whether the persons sharing the gross returns or revenues have a common or joint interest in the property from which the returns or revenues are derived; or

(4) ownership of mineral property under a joint operating agreement.

(c) An agreement by the owners of a business to share losses is not necessary to create a partnership.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

Notes of Decisions (129)

V. T. C. A., Business Organizations Code § 152.052, TX BUS ORG § 152.052
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
Texas Rules of Appellate Procedure
Section Four. Proceedings in the Supreme Court
Rule 61. Reversible Error (Refs & Annos)

TX Rules App.Proc., Rule 61.1

61.1. Standard for Reversible Error

Currentness

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the Supreme Court concludes that the error complained of:

(a) probably caused the rendition of an improper judgment; or

(b) probably prevented the petitioner from properly presenting the case to the appellate courts.

**Credits**
Eff. Sept. 1, 1997.

Notes of Decisions (45)

Rules App. Proc., Rule 61.1, TX R APP Rule 61.1
Current with amendments received through 6/1/2015

---

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Civil Practice and Remedies Code (Refs & Annos)
>     Title 2. Trial, Judgment, and Appeal
>       Subtitle C. Judgments
>         Chapter 41. Damages (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 41.001

§ 41.001. Definitions

Effective: September 1, 2003
Currentness

In this chapter:

(1) "Claimant" means a party, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff, seeking recovery of damages. In a cause of action in which a party seeks recovery of damages related to injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party seeking recovery of damages.

(2) "Clear and convincing" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.

(3) "Defendant" means a party, including a counterdefendant, cross-defendant, or third-party defendant, from whom a claimant seeks relief.

(4) "Economic damages" means compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages.

(5) "Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. "Exemplary damages" includes punitive damages.

(6) "Fraud" means fraud other than constructive fraud.

(7) "Malice" means a specific intent by the defendant to cause substantial injury or harm to the claimant.

(8) "Compensatory damages" means economic and noneconomic damages. The term does not include exemplary damages.

(9) "Future damages" means damages that are incurred after the date of the judgment. Future damages do not include exemplary damages.

(10) "Future loss of earnings" means a pecuniary loss incurred after the date of the judgment, including:

(A) loss of income, wages, or earning capacity; and

(B) loss of inheritance.

(11) "Gross negligence" means an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

(12) "Noneconomic damages" means damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages.

(13) "Periodic payments" means the payment of money or its equivalent to the recipient of future damages at defined intervals.

**Credits**

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, eff. Sept. 2, 1987. Amended by Acts 1995, 74th Leg., ch. 19, § 1, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch. 204, § 13.02, eff. Sept. 1, 2003.

Notes of Decisions (178)

V. T. C. A., Civil Practice & Remedies Code § 41.001, TX CIV PRAC & REM § 41.001
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
 Civil Practice and Remedies Code (Refs & Annos)
  Title 2. Trial, Judgment, and Appeal
   Subtitle C. Judgments
    Chapter 41. Damages (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 41.003

§ 41.003. Standards for Recovery of Exemplary Damages

Effective: September 1, 2003
Currentness

(a) Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:

  (1) fraud;

  (2) malice; or

  (3) gross negligence.

(b) The claimant must prove by clear and convincing evidence the elements of exemplary damages as provided by this section. This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice.

(c) If the claimant relies on a statute establishing a cause of action and authorizing exemplary damages in specified circumstances or in conjunction with a specified culpable mental state, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the damages result from the specified circumstances or culpable mental state.

(d) Exemplary damages may be awarded only if the jury was unanimous in regard to finding liability for and the amount of exemplary damages.

(e) In all cases where the issue of exemplary damages is submitted to the jury, the following instruction shall be included in the charge of the court:

"You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages must be unanimous."

**Credits**
Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, eff. Sept. 1, 1987. Amended by Acts 1995, 74th Leg., ch. 19, § 1, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch. 204, § 13.04, eff. Sept. 1, 2003.

Notes of Decisions (282)

V. T. C. A., Civil Practice & Remedies Code § 41.003, TX CIV PRAC & REM § 41.003
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

---

**End of Document**                                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Appendix D

Electronically Filed
10/3/2013 11:44:13 AM
Hildalgo County District Clerks

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1257

78-236/1049
5

Aug 10th 2010 Date

Pay to the
Order of Manuel Rodrogues-Sol-Del-Rey~~Kurt~~      $ 3500, —00

Three Thousand Five Hundred and 00/100 _____ Dollars

Security
Features
Details on
Back

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For ___Advance on Rent.___                Doug Gengenbach        MP

⑈104902363⑈ ⑈000007 2678⑈ 1257

Electronically Filed
10/3/2013 11:44:13 AM
Hidalgo County District Clerks

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1264

78-236/1049
5

_Sept 4-2010_ Date

Pay to the
Order of _Jeaous Rodrogues (Sol-Del Rey farm_ $ _3,500 00/_

_Three thousand Five Hundred al 00/_ Dollars

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For _Draw for Sol Del Rey_ _Doug Gengenbach_

⑈104902363⑈ ⑈000007 2678⑈ 1264

Harland Clarke GUARDIAN SAFETY® BLUE

Security
Features
Details on
Back

Electronically Filed
10/3/2013 11:44:13 AM
Hidalgo County District Clerks

Electronically Filed
10/9/2013 11:44:13 AM
Hidalgo County District Clerks

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1273

76-238/1049

Sept 25, 2010 Date

Pay to the
Order of _Jesus Rodriguez (s/a Del Rey Farms)_ $456.75

_Four Hundred Fifty six and 75/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

⑈104902363⑈ ⑈000007267811⑈ 12730

20100927005600837442 3799

Electronically Filed
10/3/2013 11:44:13 AM
District Clerks

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1277

76-236/1049
5

~~Oct 5th 2010~~ Date

Pay to the
Order of _____ Jesus Rodriguez _____ $ 1450.06

One Thousand Four Hundred fifty and 06/100 Dollars

Security
Features
Details on
Back

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____ Machine Hire _____

Doug Gengenbach

⑆104902363⑆ ⑈000007 2678⑈ 1277

2010101200600051943538 01

2010101200800051943538 01

Electronically Filed
10/3/2013 11:44:13 AM
Hidalgo County District Clerks

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1287

76-236/1049
5

Oct 20th 2016 Date

Pay to the
Order of ... Sal + Del + Rey Farms Gregus Rod Reg us    $ 1,391 40

One Thousand three hundred ninety one 8/40 /00 Dollars

Security
Features
Details on
Back

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For _____

Doug Gengenbach

⑆104902363⑆ ⑈00000726788⑈ 1287

Hanand Clarka GUARDIAN SAFETY® BLUE

2010102500600051313143 3801

Electronically Fil
10/3/2013 1:14:13
strict Clerk

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1288

76-236/1049
5

Oct 27 20~~~~ Date

Pay to the
Order of ~Gene Rodriguez~ (Bal - Del - Rug Farms)                 $ 942. 00

~Nine Hundred Forty two~ 00/100 Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

⑆104902363⑈ ⑆00000 72678⑈ 1288

Harlur J Clurk  GUARDIAN SAFETY™ BLUE

20101101005600742078 3800

20101101005600742078 3800

Electronically Fil
10/3/2013-11:44:13,
Hidalgo County District Clerk

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1293

76-236/1049
5

*Oct 20th 2010* Date

Pay to the
Order of _Soul-Wel-Roy-Farm_ _Jesus Rodriguez_ _____ $ _292.__ 00

_Two Hundred Ninty two 0/100_ _____ Dollars

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For _Cows_ _____ _Doug Gengenbach_

⑈104902363⑈ ⑈000007 2678⑈ 1293

2010110500560075 2522 3799

Electronically Fil...
07/5/2015 11:14:13...
Hudson County District Clerk

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69026

1294

76-236/1049
5

Oct 30 20/4 Date

Pay to the
Order of _Jesus Rodriguez_ _Del-Del-Ray-Farm_ $ 942 00

_Nine hundred Forty two and 00/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69026

For _____

⑂104902363⑂ ⑈00000072678⑈ 1294

201011050056007525213799

Electronically Fil
10/3/2013 11:44:13
Hidalgo County District Cler

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1295

76-236/1048
5

Nov.16 2010 Date

Pay to the
Order of _Sul-Del-Ray.Farms_ _Kevin Rodriquez_  $ 942.⁰⁰

_Nine Hundred Forty two ⁰⁰/₁₀₀_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

Harland Clarke GUARDIAN SAFETY® BLUE

Security
Features
Details on
Back

For _____

⑈104902363⑈ ⑈000007 2678⑈ 1295

2010111000560008376665 3800

Electronically File
10/3/2013 11:44:13 /
District Clerk

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1297

76-236/1049
5

Oct 29 2016 Date

Pay to the Order of _Willow Co-op_ $ 2,407.63

Two Thousand Four Hundred Seven 63/100 Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

Doug Gengenbach

⑈104902363⑈⑈0000072678⑈ 1297

FOR DEPOSIT ONLY
WILLACY CO-OP

Electronically Fi
10/3/2013 11:44:13
...trict Cler

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1304

76-238/1049
5

Nov. 15 2016 Date

Pay to the
Order of _Jeaun Rollin_    Sal - Ref - Ray Farms    $ 942.⁰⁰

_nine hundred forty two and ⁰⁰/₁₀₀_    Dollars

**FIRST BANK &**
**TRUST COMPANY**
Eustis Branch
Eustis, Nebraska 69026

For _____

⑆ 104902363 ⑉ 000007 2678 ⑆ 1304

20101116005600838856 3799

Electronically Fil
10/3/2013 11:44:13.
Hidalgo County District Clerk

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1305

76-236/1049
5

Nov. 22 26/10 Date

Pay to the
Order of _Second ___ $ 942.00

Nine Hundred Forty Two _____ Dollars

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

Security
Features
Details on
Back

For _____

⑆104902363⑆ ⑈00000726 78⑈ 1305

Harland Clarke GUARDIAN SAFETY• RI UF

2010112200560007450046 38804

Electronically Fil
10/3/2013 1 4:13
Dist t Clerl

**DOUGLAS GENGENBACH**
76211 RD 422
EUSTIS NE 69028

1306

76-236/1049
5

Nov. 27 20 18 Date

Pay to the
Order of _Jal - Del - Ray Farms_ Rodriguez   $ 1,600.00

_Mil Sei Cientos_ _____ Dollars

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For _____

⑈104902363⑈ ⑇00000726 78⑇ 1306

NP

Harland Clarke GUARDIAN SAFETY® BLUE

20101126060004201943726

Electronically Fil
10/3/2013 14:13
Hidalgo County District Clerk

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1307

78-238/1049
5

Pay to the
Order of _Sal-Del-Ray-Fund of_ _Jesus Rodriguez_ $ 870.00

_Eight Hundred Seventy 00/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

⑈:104902363⑈:⑈000007 2678⑈ 1307

Harland Clarke GUARDIAN SAFETY® BLUE

2010120600560008332783799

Electronically Fil
10/3/2013 11:44:13
Hidalgo County District Cler

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1308

76-236/1049
5

Date _Nov 16 2014_

Pay to the
Order of _Sal ~ Del ~ Roy ~ Jaime_ _Jesus Rodriguez_ | $ *900* 00

_Nine Hundred and 00/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028 _In Mexico_

For _548502_

⑈104902363⑈ ⑈000007 2678⑈ 1308

Horland Clarke GUARDIAN SAFTY BLUE

20101122005600745044  3804

Electronically Fil
10/3/2013 11:44:13
trict Clerl

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1321

76-236/1049
5

Nov 11 2010 Date

Pay to the
Order of _Jesus Rodriguez_ $ 870.00

Eight Hundred Seventy and 00/100 Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

Security
Features
Details on
Back

For _____

Doug Gengenbach

⑆104902363⑆ ⑈00000 72678⑈ 1321

Harland Clarke GUARDIAN SAFETY® BLUE

Jesus Rodriguez

20101213005600746893 3804

. . . . Save . . . . on the
. . . check fraud . . . . .
. . . lines printed on front and back
. . ORIGINAL DOCUMENT clearly
. . . across the back
. . . visible on front au . . . .

. . . not cash it

Electronically Fil
10/3/2013 14:13
Hidalgo County District Cler
Harland Clarke GUARDIAN SAFETY® BLUE

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1322

76-236/1049
5

Dec 18 2010 Date

Pay to the
Order of _Karue Rodriguez_                    $ 870.00

Eight Hundred Seventy no /00 Dollars

Security
Features
Details on
Back

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For _____                    Doug Gengenbach MP

⑈104902363⑈ ⑈00000072678⑈ 1322

2010121700560083716 3799

Jesus Rodriguez

1322

Electronically Fil
10/3/2013 11:44:13
Hidalgo County District Cler

Electronically Fil
10/3/2013 11:44:13
Hidalgo County District Cler

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1323

76-236/1049
5

Dec 25 2010 Date

Pay to the
Order of _Juan Rodriguez_  $ 870.00

_Eight Hundred Seventy and 00/100_ Dollars

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69026

For _____

Doug Gengenbach

MP

Harland Clarke GUARDIAN SAFETY® BLUE

Security
Features
Details on
Back

⑈10490 2363⑈ 00000 7267 8⑈ 1323

201012300056007664455 3801



**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1332

76-238/1048
6

Dec 30th 2010 Date

Pay to the
Order of Juan Rodriguez                    $ 362.50

Three Hundred Sixty-Two and 50/100                    Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For_____

⑆104902363⑉⑈000007 2678⑈ 1332

DDA Debits - 01/04/2011

201101030006000511474  3800

201101030006000511474  3800

DDA Debits - 01/04/2011



**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1333

76-236/1049
6

Date

Pay to the
Order of_____ $ 362.⁵⁰/₁₀₀

Three Hundred Sixty Two and 50/100____Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For_____

⑈10490 2363⑈⑆00000 7 2678⑈ 1333

DDA Debits - 01/04/2011

20110103006000511475  3800

DDA Debits - 01/04/2011



**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1334

76-236/1049
5

Jan 8th 2011 Date

Pay to the
Order of Frank Rodriguez

$ 982.62

Nine Hundred Eighty Two 62/100 Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For_____

⑈104902363⑈ ⑈00000 726 78⑈ 1334

DDA Debits - 01/11/2011

2011011000600051343 0   3799

2011011000600051343 0   3799

DDA Debits - 01/11/2011



**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1335

26-236/1049
5

Jan 15 2011 Date

Pay to the Order of _____ Jesus Rodriguez _____ | $ 725.00

_____ Seven Hundred Twenty Five _____ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

1:10490 2363:" 00000 72678" 1335

DDA Debits - 01/19/2011

20110118005600768787 3801

20110118005600768787 3801

DDA Debits - 01/19/2011



DOUGLAS GENGENBACH
75211 RD 422
EUSTIS NE 69028

1340

76-236/1049
5

Pay to the Order of _____ Kevin Rodriguez _____ $ 625.00

Six Hundred Twenty Five no/100 ___ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

⑈104902363⑈ ⑈00000726 78⑈ 1340

DDA Debits - 01/26/2011

20110125005600832247   3799

DDA Debits - 01/26/2011



**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1344

76-236/1049

Jon 28, 2010 Date

Pay to the
Order of _Jesus Rodriguez_ $ 1214.16

One Thousand Two Hundred Fourteen_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For_____

⑈104902363⑈⑈00000726781344

DDA Debits - 02/01/2011

20110131003900286304  3817

20110131003900286304  3817

DDA Debits - 02/01/2011

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1347

76-230/1049
5

Feb. 5th 2011 Date

Pay to the
Order of _Jesus Rodriguez_ $616.25

_Six Hundred Sixteen 25/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

⑆10490 2363⑆ ⑈00000 7 2678⑈ 1347

DDA Debits - 02/08/2011



20110207006000511691  3800

20110207008000511691  3800

DDA Debits - 02/08/2011



**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1361

76-235/1049

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~/Date

Pay to the
Order of _____ $ 913.

_____ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

DDA Debits - 03/01/2011

2011022800600051740 3802

20110228006000517404 3802

DDA Debits - 03/01/2011



**DOUGLAS GENGENBACH**
76211 RD 422.
EUSTIS NE 69028

1362

76-236/1049
5

Mon 1st-11 Date

Pay to the Order of _W illacy Co-op_ $ 5490 43/100

_Five thousand Four hundred ninty and 43/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For_____

⑆104902363⑆ ⑈00000726 78⑈ 1362

DDA Debits - 03/04/2011

FOR DEPOSIT ONLY
WILLACY CO-OP

DDA Debits - 03/04/2011



**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1363

76-236/1049
5

Date

Pay to the
Order of _____ $ 870.00

Eight Hundred Seventy no/100 _____ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

⑈104902363⑈ ⑈00000726 78⑈ 1363

DDA Debits - 03/08/2011

20110307006000510235  3800

20110307006000510235  3800

DDA Debits - 03/08/2011



DDA Debits - 06/01/2011



DDA Debits - 06/01/2011

Appendix E

Electronically Filed
10/3/2013 11:44:13 AM
Hidalgo County District Clerks
Harlan Clerks GUARDIAN SAFETY., BLUE

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1284

76-236/1049
5

Oct 14 2010 Date

Pay to the
Order of  Willowy  Co-op.          | $ 1995.24

One thousand nine hundred ninety five  Dollars 24/100

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

1:104902363: 00000072678 1284

⑈104902363⑈ 00000072678 1284

FOR DEPOSIT ONLY
WILLACY CO-OP

Electronically Fil
10/3/2013 11:44:13
District Clerk

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1289

76-236/1049
5

Oct 27th 2010 Date

Pay to the
Order of: Willacy Co-of                                    $ 4,800 00

Four Thousand Eight Hundred and 00/100 Dollars

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For

⑈:104902363⑈ ⑈000007 2678⑈ 1289

Doug Gengenbach

FOR DEPOSIT ONLY
WILLACY CO-OP

Electronically Fil
Hidalgo County District Clerl

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1296

76-238/1049
5

Nov. 10-2014 Date

Pay to the
Order of _Saul - Del - Roy - Farm Juan Rodriguez_ $6,363.

_Six thousand Three Hundred Sixty three_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

Doug Gengenbach

⑈104902363⑈ ⑈000007267⑈ 1296

Harland Clarke GUARDIAN SAFETY® BLUE

Security
Features
Data is on
Back

Elena Rodriguez

Sal de Rey

2010111000560083 7664 3800

Electronically Fil
10/3/2013 11:44:13,
strict Cler

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1309

78-238/1049
5

Nov. 20 2016 Date

Pay to the
Order of _Jesus Rodriguez_ $ 1,363.00

Sal-Del - Ray - Farms

_Thirteen Hundred Sixty Three no/_ Dollars

Security
Features
Details on
Back

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For _Planting Trees_

⑈:104902363⑈:⑈00000 72678⑈ 1309

Harland Clarke GUARDIAN SAFETY · BLUE

2010112200560074 45045 3804

Electronically Fil
10/3/2013 11:44:13 /
Hidalgo County District Clerk

**DOUGLAS GENGENBACH**
75211 RD-422
EUSTIS NE 69028

1310

76-235/1049
5

Nov. 22 24 Date

Pay to the
Order of _Wallacy Co. of_ _____ $ 9119. 75

_Nine Thousand One Hundred Nineteen 75/100_ Dollars

First Bank &
Trust Company

Eustis Branch
Eustis, Nebraska 69028

For _____

⑆104902363⑆ ⑈00000726 78⑈ 1310

FOR DEPOSIT ONLY
WILLACY CO-OP

Electronically Fil
10/3/2013 14:44:13
Hidalgo County District Cler

**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028

1319

76-236/1049
5

Dec 6th 2011 Date

Pay to the
Order of _American Implement_ $ 4,480. 00

_Four thousand Four Hundred Eighty and no/100_ Dollars

Security
Features
Details on
Back.

FIRST BANK &
TRUST COMPANY

Eustis Branch
Eustis, Nebraska 69028

For _____

⑆104902363⑆ ⑈000007 2678⑈ 1319

Doug Gengenbach

**FOR DEPOSIT ONLY**
American Implement, Inc.
Western State Bank
GARDEN CITY, KS

WESTERN STATE BANK, KS

Secur ty Features exceed industry standards and include
• The patented Security Weave  pattern on the
  back designed to deter check fraud (U.S. Patent No. 6 519 159)
• Microprint ￼ lines printed on front and back
• The words "ORIGINAL DOCUMENT" clearly
  apparent across the back
• Padlock icon visible on front and back

Do not cash if
• Any of the features listed above are missing
  or appear altered
• Fugitive ink on back looks pink or has disappeared
• Brown stains and colored spots appear on both
  front and back
• The word "VOID" appears clearly to the right
  of this message





**DOUGLAS GENGENBACH**
75211 RD 422
EUSTIS NE 69028
# 308-325-0023

1342

76-235/1049
5

Date

Pay to the
Order of _Wanda Martin Engleman_ $ 81.⁰²

_Eighty One_ and _00/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For __# 985954__

⑈104902363⑈ ⑈0000072678⑈ 1342

DDA Debits - 01/26/2011

DDA Debits - 01/26/2011



DOUGLAS GENGENBACH
75211 RD 422
EUSTIS NE 69028
1345
78-238/1049
5

Pay to the
Order of _____ Willacy Coop _____ $ 3,323.23

Three Thousand Twenty Three & 23/100 _____ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For _____

⑆104902363⑆ ⑈00000726 78⑈ 1345⑉

DDA Debits - 01/27/2011

FOR DEPOSIT ONLY
WILLACY CO-OP

DDA Debits - 01/27/2011

**DOUGLAS GENGENBACH**
76211 RD 422
EUSTIS NE 69028

1359

76-236/1048
5

_Febr. 25 2011_ Date

Pay to the
Order of_ B - H Service Inc_ | $ _1915.20_

_One Thousand Nine Hundred Fifteen and 20/100_ Dollars

FIRST BANK &
TRUST COMPANY
Eustis Branch
Eustis, Nebraska 69028

For_____

⑈104 90 2363⑈⑈ 00000 7 2678⑈ 1359

DDA Debits - 03/10/2011

L0040330 3/9/2011   FSBLOUISE.LOUISE.TX LOUISE. TX >11

PAY TO THE ORDER OF
THE FIRST STATE BANK
113123065
FOR DEPOSIT ONLY
B-H SERVICES INC
1035522

DDA Debits - 03/10/2011

# Appendix F

# ZS BRADY & CO.

*A Professional Corporation of Attorneys and Counselors*

July 1, 2011

*Via First Class Mail*

Mr. Isaac J. Tawil
GARCIA QUINTANILLA & PALACIOS
5526 N. 10<sup>th</sup> Street
McAllen, Texas 78504

Mr. Felipe Garcia, Jr.
LAW OFFICE OF FELIPE GARCIA, JR.
201 E. University Drive
Edinburg, Texas 78539

> Re: Cause No. C-1553-11-H; *Doug Gengenbach v. Jesus Rodriquez and Willacy Co-op*; In the 389<sup>th</sup> District Court of Hidalgo County, Texas

Dear Mr. Tawil and Mr. Garcia:

Pursuant to the Temporary Injunction entered by the 389<sup>th</sup> District Court in the above referenced matter, please find enclosed an accounting of the grain that has been delivered to Willacy Co-op by Jesus Rodriguez, and marketed and/or sold by Willacy Co-op, together will all expenses, charges, fees, or other advances that have been charged against the Account of Jesus Rodriguez.

As the first page of the accounting enclosure shows, to date, grain that has been delivered to Willacy Co-op by Jesus Rodriquez has been marketed and/or sold for a total value of $171,853.70; the total costs for drying charges, grain sorghum check-off remittance, and Willacy's accounts receivable balance as related to Rodriquez are $26,835.21.

In addition, please find enclosed an affidavit I have prepared, setting forth the attorney's fees that Willacy Co-op has incurred due to its involvement in this matter, revolving around the ownership of the grain that has been delivered to Willacy Co-op. Under the terms of the Court's Temporary Injunction, Willacy Co-op has effectively gained status as an Interpleader. *See* TEXAS RULE CIVIL PROCEDURE 43; *Union Gas Corp. v. Gisler*, 129 S.W.3d 145, 152 (Tex. App. – Corpus Christi 2003, no pet.). The parties have agreed that Willacy Co-op is an innocent party, as Willacy was unaware of this dispute until this lawsuit was filed, and as set forth above, Willacy Co-op is depositing the disputed funds into the registry of the court. Therefore, Willacy Co-op is withholding the $4400.00 it has incurred in attorneys' fees due to its involvement in this matter between your clients. *Olmos v. Pecan Grove Municipal Utility Dist.*, 857 S.W.2d 734, 742 (Tex. App – Houston [14<sup>th</sup> Dist.] 1993, pet. denied); *General American Life Ins. v. Rodriguez*, 641 S.W.2d 264, 268 (Tex. App. – Houston [14<sup>th</sup> Dist.] 1982, no writ).

July 1, 2011
Page 2 of 2

Therefore, Willacy Co-op will deposit $140,618.49 into the registry of the Court, according to the Court's Order in the Temporary Injunction.

Thank you for your attention to this matter. Should you have any questions, please feel free to contact this office at the number below.

Best regards,

Amber S. Brady,
Attorney for Willacy Co-Op

Enclosures
cc:     Mr. Chris Breedlove
        WILLACY CO-OP
            *Via Email*

<u>CERTIFICATE OF SERVICE</u>

I certify that on July 10, 2015 a true and correct copy of Appellant's Brief and Appendix was served on Felipe Garcia Jr. electronically at fgjr201@hotmail.com, and the electronic transmission was reported as complete.


<div align="center">

*/s/ Ricardo Guerra*

Ricardo Guerra

E-mail:service@rickguerra.com

</div>


<u>CERTIFICATE OF COMPLIANCE</u>

I, Rick Guerra, attorney for Appellant Doug Gengenbach certify that this Appellant's Brief was generated by a computer using Microsoft Word for Mac 2011 version 14.0.0, which indicates that the word count of this document is 11,635 per Tex. R. App. P. 9.4 (i).


<div align="center">

*/s/ Ricardo Guerra*

Ricardo Guerra

E-mail:service@rickguerra.com

</div>